## ALLAN v. TERRELL.

No. 17428. Opinion Filed Sept. 13, 1927.

(Syllabus.)

1. Alteration of Instruments—Note in Escrow Bearing Absolute Indorsement of Payee—Liability of Indorser not Affected by His Unauthorized Alteration of Indorsement.

Where a note bearing the general indorsement of the payee is enclosed in an envelope on which appear directions in writing to the escrow bank to deliver the same to T. when he delivers abstract with clear title to certain lots to said payee, upon the performance of such condition said note becomes the absolute property of T. and should be delivered to him in the condition in which it was

when placed in escrow; and if, after the performance of said condition, the payee should gain control of said note and without the consent of T. change the indorsement thereon so as to make it without recourse, the court will disregard such alteration in an action thereon between T. and the payee.

2. Evidence—Action by Owner of Note Against General Indorser—Faiure of Defense that Indorsement was "Without Recourse."

Where a promissory note bears the general indorsement of the payee and the present owner and holder thereof institutes an action thereon against the said indorser, whose answer admits the execution of the note, but pleads that the same was indorsed without recourse and that he understood it was to be so indorsed, but sets up no allegation of fraud, artifice, surprise, or mistake, and his proof is limited to this issue, no substantial defense to the note aforesaid is pleaded or proved, and a demurrer to such defense is properly sustained.

3. Appeal and Error—Necessity for Record of Excluded Evidence.

Where defendant excepts to the exclusion of evidence by the court and assigns same as error, there must be a showing in the record as to what the excluded evidence would have been before this court can say mere was reversible error in such ruling.

4. Evidence—Contracts — Parol Evidence Varying Writing not Admissible.

Where the terms of a contract are reduced to writing and the same are clear, explicit, and unambiguous, the contract must be permitted to speak for itself, and the same cannot be, by the court, at the instance of one of the parties, altered or contradicted by parol evidence, unless in case of fraud, accident, or mutual mistake.

5. Pleading—Discretion of Court as to Amendments.

While amendments are favored in the furtherance of justice, the granting or refusal of permission to amend rests largely within the discretion of the trial court, and it is not an abuse of such discretion to refuse to permit, after the trial is begun, an amendment of an answer which would substantially change the defense.

Commissioners' Opinion, Division No. 1.

Error from District Court, Logan County; Charles C. Smith, Judge.

Action by Robert Terrell against Robert Allan et al. on a promissory note. From judgment for plaintiff, defendant Allan appeals. Affirmed.

Fred W. Green and Merle G. Smith, for plaintiff in error.

O. G. Hornor, for defendant in error.

BENNETT, C. A civil action by Robert Terrell against Robert Allan et al. This appeal involves only the rights of Robert Terrell and Robert Allan, who will be hereinafter referred to respectively as plaintiff and defendant, in the order in which they appeared in the trial court.

So much of the petition as may be necessary for a decision of this cause is as follows: That on or about July 5, 1921, Harry Gallaher executed and delivered to Robert Allan a promissory note for $3,500. a copy of which was attached to plaintiff's petition. and for the purpose of securing the payment of said note a mortgage was given to Robert A lan on certain real estate in East Guthrie, subject to a first mortgage in favor of J. L. Melvin.

That on December 29, 1923, plaintiff was the owner of lots one (1) and two (2), block thirty-eight (38), Capitol Hill addition to Guthrie, and that on said date plaintiff and defendant entered into a contract of exchange whereby plaintiff was to trade to Robert Allan the real estate last mentioned for the note and mortgage above set out; that said contract was in writing, a copy whereof was attached to plaintiff's petition and marked Exhibit "A."

That Robert Allan was to have possession of the real estate January 1, 1924, and that Terrell executed and delivered to said Allan a warranty deed to the premises. and he went into possession thereof and occupied same thereafter. That there was a mortgage on said real estate which matured some months after the exchange which Terrell obligated himself to pay before maturity, and that on the ——— day of February, 1924, the plaintiff Terrell paid off said mortgage and furnished Allan an abstract showing clear title to the lots conveyed, all as provided for in the contract. That under the terms of the written contract the papers to be executed by Robert Allan, to wit, the assignment of the real estate mortgage and the transfer of the note thereby secured, were to be made out and held in the Security State Bank until Terrell should furnish Allan an abstract showing clear title to the real estate conveyed to him, and that in fact such papers were made out, assigned, and transferred by said Allan, and were deposited in and held by the Security State Bank under the condition and for the purpose named above. A copy of the contract is as follows:

"Contract.

"This agreement, made and entered into this 29th day of December, 1923, by and be-

tween Robert Terrill, party of the first part, and Robert Allan, party of the second part:

"Witnesseth, that said party of the first part hereby agrees to sell and convey, or have conveyed, unto the said party of the second part or who he may designate, by a good and sufficient warranty deed, the following described real estate, to-wit:

"Lots one (1) and two (2), in block thirty-eight (38), in that part of the city of Guthrie known as Capitol Hill, in the county of Logan, state of Oklahoma, for the sum of thirty-five hundred and no-100 dollars ($3 500). This consideration is evidenced by one certain $3 500 mortgage and note which is a second mortgage on the Chiropractor Sanitarium, same to draw 8 per cent. interest from the 7th day of January, 1924.

"Papers to be made out and held in the Security State Bank until an abstract showing good clear title is furnished.

"Party of the first part agrees to furnish abstract showing a good title. It is further agreed that said party of the second part to have possession of said premises and the use thereof after January 1, 1924. And to pay all taxes thereon after 1922 taxes. Any failure on the part of the said second party to faithfully keep and perform each and all of the above conditions shall render this contract void at the option of the said party of the first part, and he may retain all payments made as damages. This contract shall be binding upon the heirs, executors, administrators and assigns of the respective parties.

"In witness whereof, said parties have hereunto set their hands this 29th day of December, 1923.

"Robert Terrill,
"Robert Allan."

On the back of the mortgage held in escrow appears the following indorsement:

"Assignment.

"Know all men by these presents:

"That Robert Allan, of Logan county, in the state of Oklahoma, the within named mortgagee, in consideration of the sum of thirty-five hundred and no-100 dollars, to him in hand paid, the receipt whereof is hereby acknowledged, does hereby sell, assign, transfer, set over and convey unto Robert Terrell, heirs and assigns. the within mortgage deed, the real estate conveyed. the promissory note, debts and claims thereby secured, and covenants therein contained. and recorded in book 54 page 136 county,

"To have and to hold the same forever, subject. nevertheless, to the conditions therein contained.

"In witness whereof, the said mortgagee

has hereunto set his hand this 29th day of December, 1923.

"Robt. Allan."
(Acknowledged before notary).

And on the back of the note secured thereby appears the following indorsement:

"For value received hereby guarantee the payment of the within note at maturity, or at any time thereafter, or any renewal of the same, together with 10 per cent. of the amount as attorney fees, if suit be instituted hereon, and hereby waive protest, demand and notice of nonpayment thereof."

"Robt. Allan."

The petition further alleges that on the ———day of February, 1924, Terrell paid off the $1,000 mortgage and so notified Allan. and that they together went to the bank for the purpose of turning over to Terrell the note and mortgage; that Allan notified the bank that he had received the correct abstract and directed the bank to turn over the papers to Terrell; that the banker passed the papers through the window and that Allan took them and started to erase his name on the back of the note, and, when Terrell asked Allan what he was doing, he said that he would write his name in ink, the name being signed in pencil at the time the papers were deposited in escrow with the bank, and that Allan, without the knowledge and consent of the plaintiff, indorsed his name on said note "without recourse." thereby wrongfully and unlawfully attempting to change and vary his absolute indorsement of said note, and thereupon Terrell refused to take said papers until he had consulted with his attorney, who advised the acceptance of the papers and the mailing of a written notice to Allan informing him that he would be held to the terms of the contract and to the absolute indorsement of said note unaffected by the attempt to mutilate said paper by said Allan or his effort to change the effect of said indorsement, and that the plaintiff thereupon notified Allan accordingly and took the papers. The petition asked for judgment of foreclosure of the mortgage as against the maker of the note and mortgage and judgment for $3 745 against Allan as the indorser thereof.

The answer of the defendant is as follows:

"Answer.

"Comes now Robert Allan. one of the defendants above named, and for answer to the petition of the plaintiff herein. denies each and every allegation therein contained except that part which is hereinafter specifically admitted.

"The said. defendant, Robert Allan, admits that he assigned the said note referred to in the second cause of action in plaintiff's petition herein, but specifically denies that at any time he indorsed said note ..conditionally. Defendant states that said note was indorsed without recourse, and such was the purpose and intent of both parties to the transaction, and that the note was so indorsed without recourse, and that the said defendant. Robert Allan, was in no way to be personally liable or personally guarantee the payment of said note. The defendant, Robert Allan, states that the allegation in plaintiff's petition that he changed his indorsement after the trade had been consummated is untrue.

"Wherefore, having fully answered, defendant, Robert Allan, prays that plaintiff take nothing and that this defendant be fully discharged, and that he have the costs of this action."

The cause was tried on November 20, 1925; opening statements made and evidence introduced, at the conclusion of which plaintiff demurred to the evidence of defendant and moved the court to direct a verdict in favor of the plaintiff, and thereupon the court sustained the demurrer and motion, and entered judgment accordingly for the plaintiff and against the defendants for $3,745. and for foreclosure, and this cause is lodged here for review.

There are seven grounds set out in the motion for new trial and nine grounds asserted in the petition in error, but the only ones presented in the brief of plaintiff in error are, first, that the court erred in refusing to allow the defendant to amend his pleadings at the trial; second, that the court erred in excluding certain evidence tendered by the defendant, Robert Allan; and, third, that the verdict as directed and judgment thereon were contrary to law.

Terrell, the plaintiff, testified that he was the owner of lots one (1) and two (2) in block thirty-eight (38), Capitol Hill, in December, 1923; that he entered into a contract with Dr. Allan to trade him this property for the note and mortgage sued on. through Roy Kneeland, an agent, who drew the contract which was identified by the witness as hereinbefore set out; that he immediately delivered a deed to Dr. Allan for the real estate above, and that the doctor took possession thereof in January following. The contract provided that the papers were to be made out and held in the Security State Bank until the abstract was prepared showing good title and. that these papers (the note and mortgage) were made out and put in the bank at the time the deal was closed. Plaintiff identifies the envelope containing the papers upon which appears the following:

"To Security State Bank, Guthrie, Okla.

"Please hold the enclosed papers until Robert Terrell delivers to Robert Allan clear abstract of title to lots 1 and 2, block 38, Capital Hill, except 1923 taxes, then turn papers to Mr. Terrell.

"(Signed) Robt. Allan."

There was a mortgage of $1,000 against the property, and plaintiff told Allan that if he would. not need the money he (Terrell) would let it run until it was due in April and then pay off the same; that he paid off the mortgage and had the abstract brought down to date, not sure of the date, but it was the same day that a letter was written by Mr. Hornor to Dr. Allan, which was dated February 7, 1924. That plaintiff called at the office of Dr. Allan and told him that he was ready for the papers, and that he had complied with his part of the contract; that they then went to the bank and called for the note and mortgage with the envelope, and that Allan took them out of the envelope and laid the note down on the counter and commenced rubbing his name out with a lead pencil and that witness said, "What are you doing?" and that Allan answered, "I will write it in ink." That the signature was written in pencil and that Allan wrote "without recourse," and then his name, and that the witness said, "You have changed the note and I won't take the note," and that witness refused to take the note and went to see attorney Hornor about it. That the note was taken back to Mr. Kneeland and that witness thought Kneeland brought the note back to him, but he refused to take the same, and that witness went to see about bringing suit. That after some talk a letter was written and mailed to Dr. Allan. The letter in brief sets out the terms of the contract; that the papers were executed and put in the bank in escrow to be turned over to Terrell, when title should be clear, and that when title was so cleared said Allan asked the bank for the papers to be turned over to Terrell, and that when they were handed out Allan took the note out of the envelope and erased the indorsement thereon, which was a general indorsement, and wrote in the words "without recourse" without the consent and over the objection of plaintiff. This letter further says that the plaintiff has requested that the words "without recourse" be erased so as to leave the indorsement as it was when the papers were put up in escrow and. as it was when the bank turned them over to Allan, but that the

said Allan refused, and the letter further gives notice that the plaintiff does not recognize the change which Allan made in the papers. The note and mortgage were then identified by the witness and introduced without objection and witness stated that the said note had not been paid.

Thereupon the following questions were asked Mr. Terrell by defendant's counsel:

"(1) At what price did you list it? (2) You made some investigation of this property? (3) And you looked at the property? (4) The property was in a very good state of repair, was it? (5) Was there anything said at that time with reference to how that note was to be indorsed? (6) And that was the first time that you knew that there was any indorsement on the back of the note? (7) Is it not a fact, Mr. Terrell, that after you saw the original note and the original mortgage in the Security State Bank in the escrow envelope, and at the time you testified you examined the papers, is it not a fact that you stated to Mr. Kneeland, this in substance, 'that Robert Allan's name is indorsed on the note, and that would certainly make the paper good?' By the Court: Is it for the purpose of an impeaching question? By Mr. Green: Yes, sir."

Robert Allan, defendant, testified as follows:

That the contract identified was entered into through Mr. Kneeland; that the note and mortgage for $3,500 was listed with Mr. Kneeland and that Kneeland told the defendant about Terrell's property and that this resulted in the contract and the following questions were asked Dr. Allan by the defendant's counsel:

"8. When had that indorsement Robert Allan been made on that note? By the Court: You are not pleading any mistake, oversight or inadvertence. (9) I will ask you to state, Dr. Allan whether or not the indorsement Robert Allan in pencil as it existed on that note at that time—that is, the 29th day of December, 1923, had been or was made with the purpose and intent of carrying out the Terrell contract? (10) I will ask you to state whether at any time you agreed to guarantee the payment of the $3,500 note? A. No, sir; I did not."

Upon motion by defendant to strike out the answer as irrelevant, incompetent, and immaterial and tending to change the terms of a written contract, the same was sustained.

That on the 7th day of February, 1924, Mr. Terrell came to Allan's office and said that he had paid off the $1 000 mortgage and had the release; that they then went to the bank to get the papers.

"(11) What occurred there? A. I asked for the papers, and they handed them out, and during the time Dr. Gallaher had paid me some interest which was to be credited on the note, and when he gave me them I asked him to make that credit on the note. On this note I had indorsed it in pencil—it had been, I had rubbed it off partly, but it wasn't clear, because I considered this note my property until he fulfilled his part of the contract. I told him to give them credit on the note, then they handed it back to me, and my name was written out there in pencil, which had been partly erased. I had had it as security in the bank before and I stepped over to the desk and made this indorsement. as our understanding was I was to trade that note for this property, and I indorsed it without recourse and turned it over to him."

Upon motion of plaintiff so much of this answer as referred to any understanding was stricken out.

"(12) You had a conversation with Mr. Terrell about the matter. Relate that conversation? A. I stepped over to the desk and made the indorsement on the note and handed it to Mr. Terrell and says, 'Here is your paper,' and he says, 'I won't take it that way. You have put the words in there "without recourse," ' and I says, 'That was my agreement, to trade the note and mortgage for this property, and you can take it that way or you can let it alone,' and he got mad and I don't remember what he said. I didn't want to have any argument with him and I walked off. (13) I wish you would state to the court and jury the condition of the indorsement in lead pencil Robt. Allan at the time that note was deposited in the escrow papers? A. I had partly erased that after I took it out of the Oklahoma State Bank where it had been written with lead pencil. And the indorsement Robt. Allan in lead pencil was dim on this note, and I considered (it) to be erased until I went down there and fixed to make the assignment over to Mr. Terrell, then I saw it wasn't so I—and it was not until then that I erased it, and I says, 'I will put this indorsement on here with a pen'."

Roy Kneeland, for the defendant, was asked the following questions by defendant's counsel:

"(14) I wish you would state whether or not to your knowledge, Mr. Terrell saw either the note or mortgage prior to the time of the execution of the contract? (15) You may state what Mr. Terrell said at that time? By the Court: After it was deposited in escrow? By Mr. Green: Yes, sir."

Harry Gallaher, witness for defendant, was asked the following questions:

"(16) Did you have a conversation with

Mr. Terrell about the transaction after the papers were put up in the Security State Bank? Objected to as incompetent, irrelevant and immaterial. Sustained. Exception allowed. By Mr. Green: The witness Gallaher, if permitted to testify, would state substantially that he had a conversation with Robert Terrell after the papers in question were deposited in escrow, and that the plaintiff Terrell referred to the fact that he had examined the original papers at the bank and that Robert Allan's indorsement was on the back of said note, and that there would therefore be no question in regard to the second mortgage and note being good. Objection sustained. Exception."

"By Mr. Green: The defendant, Robert Allan, at this time asks leave to amend his answer by pleading and setting up that through oversight, mistake and inadvertence, the note was delivered to the escrow bank with a pencil indorsement of the signature of Robert Allan which had been made long prior thereto and that the defendant, Robert Allan, under the terms of the contract was to be delivered an abstract of title and that the contract contemplated a future delivery of such abstract of title and that the contract would not be completed until the delivery thereof. And that the indorsement 'without recourse' was made by Robert Allan in accordance with his understanding of the contract. By Mr. Hornor: Well, I object to that at this time—it will change everything about the issues here— By the Court: Yes, sustained. Exceptions allowed."

Defendant rested and plaintiff demurred to the evidence and moved the court to direct a verdict in favor of the plaintiff. The verdict was so directed and judgment for plaintiff and against defendant for $3,745 was rendered.

The defendant in his brief argues at length three propositions: (1) That the court erred in refusing to allow him to amend his answer. (2) That the court erred in excluding testimony offered on behalf of the defendant. (3) That the verdict is contrary to law.

We shall take up the second proposition first. For convenience we have numbered the questions involving the receipt and exclusion of evidence from one to sixteen, inclusive. Questions 1, 2, 3, 4, 5, 6, 7, 8, 9, 14, and 15 were seasonably objected to and the objections were sustained, and no statement in form or substance of what the witnesses would have sworn, had they been allowed to answer, is set out in the record or in the brief and, this, we think, a complete answer to defendant's contention with respect to these alleged errors.

"In order for this court to consider error of the trial court in ruling out competent and legal evidence, the witness must be sworn and placed on the witness stand and the evidence offered must be the evidence of such witness. When the question is asked the witness and objection to it is sustained by the court, the substance as to what the witness would state, if permitted to answer the question, must be written and presented to the court or dictated into the record. * * * and if the court then refuse to admit it in evidence, an exception may be saved and presented to this court for review; otherwise, there is nothing for this court to pass on under the assignment." Tandy v. Garvey, 115 Okla. 214, 242 Pac. 546; See, also, Moore et al. v. School Dist. No. 23, Stephens County, 94 Okla. 133, 221 Pac. 51; Novak v. Miller, 97 Okla. 144, 223 Pac. 155; Byers v. Burton, 93 Okla. 211, 220 Pac. 476; Henderson v. Todd, 91 Okla. 18, 215 Pac. 607; Eves Tall Chief v. Aaron et al., 87 Okla. 230, 209 Pac. 915; Cooksey v. Cooksey, 85 Okla. 246, 205 Pac. 938; Oklahoma Petroleum & Gasoline Co. v. Winship, 83 Okla. 146, 200 Pac. 844.

The ruling of the court upon the foregoing questions may also be sustained upon the theory that since the contract of the parties was reduced to writing and since upon its face there appears no uncertainty and no ambiguity, the very terms of the contract must be resorted to alone for determining the rights of the parties. Section 5041, C. O. S. 1921, is as follows:

"The language of a contract is to govern its interpretation, if the language is clear and explicit, and does not involve an absurdity."

Section 5042, Id.:

"When a contract is reduced to writing, the intention of the parties is to be ascertained from the writing alone, if possible, subject, however, to the other provisions of this article."

Section 5044, Id.

"The whole of a contract is to be taken together, so as to give effect to every part, if reasonably practicable, each clause helping to interpret the others."

Section 5081, Id.:

"A contract in writing may be altered by a contract in writing, or by an executed oral agreement, and not otherwise."

"The written contract itself must be resorted to as the source of authority for receiving parol evidence, which is never admissible to create an ambiguity, but only to explain or remove an ambiguity apparent on the face of the instrument, or to identify an uncertain subject-matter; and, where a written contract shows a deliberate agreement complete in itself and formally executed, parol evidence to enlarge its scope or vary its terms is never admissible.

"An agreement cannot be called incomplete

oi ambiguous merely because it does not stipulate concerning every possible contingency which might arise touching its subject-matter, it being sufficient as a complete contract to exclude parol evidence enlarging or varying it if it stipulates fully and definitely concerning the things which on its face it contemplates." Van Doren Roofing & Cornice Co. v. Guardian Casualty & Guaranty Co. et al. (Wash.) 168 Pac. 1124.

The court says in the opinion:

"These principles are elementary and fundamental, else every contract, whether written or not, would ultimately rest in parol."

"In an action by A. on a promissory note against B., where B. answered admitting the execution of the note and having received the full consideration in the way of the full amount of the loan for which the note was executed, but interposed as an affirmative defense that, although the note according to its terms was due 60 days from date, according to an oral agreement entered into at the time of the execution of the note, the note was to be renewed from time to time until B. had been given one year in which to pay the loan, held, that the trial court committed no error in sustaining the demurrer to B.'s answer." Nelson v. Sapulpa State Bank, 88 Okla. 155, 212 Pac. 309.

The court, Judge Kennamer delivering the opinion, says:

"The contention of counsel for Nelson, briefly stated, is that, although the written note obligates the defendant to pay the money within 60 days, the written note is not the exclusive evidence of the defendant's obligation in respect to the time agreed upon for the payment of the money loaned on the note. That the defendant was entitled to show by parol evidence that the contract as to the time of payment was one year instead of 60 days. We do not agree with counsel for the plaintiff in error in this contention. It is not alleged or contended that any fraud or mistake was committed in executing the note. Therefore, the note is conclusive evidence as to the date on which it must be paid."

"A contract in writing, if its terms are free from doubt and ambiguity, must be permitted to speak for itself and cannot by the courts, at the instance of one of the parties. be altered or contradicted by parol evidence unless in case of fraud or mutual mistake of facts." Stratton v. Shaffer Oil & Ref. Co., 103 Okla. 28, 228 Pac. 772.

In the above case plaintiff sued on notes. Defendant alleged among other things and offered testimony tending to show that the notes were signed by an agent of the plaintiff upon the assurance to the defendant that the execution of the notes was a mere matter of form to show where the money had been used and that the defendant received no benefit whatever from the transaction. The court sustained a demurrer to defendant's answer and evidence and rendered judgment. The court rested its opinion upon the case of Garrison v. Kress, 19 Okla. 433, 91 Pac. 1130, and section 5035, C. O. S. 1921, which holds as follows:

"The execution of a contract in writing, whether the law requires it to be written or not, supersedes all the oral negotiations or stipulations concerning its matter which preceded or accompanied the execution of the instrument."

To the same effect: Virginia-California Gasoline Co. v. Jordan et al., 98 Okla. 148, 224 Pac. 325; Roth v. Roach, 115 Okla. 199, 242 Pac. 201; Green et al. v. Cox Machinery Co., 116 Okla. 255, 244 Pac. 414; Oilton State Bank v. Ross et al., 108 Okla. 24, 234 Pac. 567; Inner Shoe Tire Co. v. Mueller et al., 108 Okla. 229, 235 Pac. 1072.

Question No. 10 is as follows: "I will ask you to state whether at any time you agreed to guarantee the payment of the $3,-500 note?" It was answered, "No, sir; I did not." Upon motion of the plaintiff this answer was stricken out as irrelevant, incompetent, and immaterial, and tending to change the terms of a written contract. The ruling of the court on this question is sustained by the authorities cited in the preceding paragraph.

The ruling of the court on question No. 11 in striking out so much of the answer thereto as referred to any "understanding" is clearly right.

"The understanding which one party to a contract has of its meaning is not evidence in his own favor and against the other party to whom such understanding was not communicated, where the effect of the contract is in controversy (citing Hershey v. Los Angeles Pacific Co. (Cal.) 153 Pac. 230; and Bird v. Thanhouser, 160 Ill. App. 653), nor can understandings which are not even indicated by anything in the writing be shown (citing Freed v. Brown, 41 Ark. 495). A fortiori, the plain terms of a contract cannot be varied by the evidence of what one of the parties supposed it to mean." 22 C. J., sec. 1591. (Citing In re Gurnsey [Cal.] 170 Pac. 402; Swift v. Occidental Min. Co. (Cal.) 700, and other cases in note 5.)

22 C. J., sec. 1590:

"Accordingly where the instrument is clear and unambiguous on its face, and no intimation is given of a disclosure of a latent ambiguity, no evidence is admissible to give to it a construction other than that which is plainly expressed. It must be interpreted according to its terms, and it will be enforced without resorting to proof of the surrounding circumstances."

See note 98, Id., citing Gish v. Ins. Co. of N. A., 16 Okla. 59, 87 Pac. 869, and Liverpool, London & Globe Ins. Co. v. Richardson, 11 Okla. 585, 69 Pac. 938, wherein the second paragraph of the syllabus is as follows:

"Contract—Implications of. When parties have deliberately entered into a written contract in such terms as import a legal obligation, without any uncertainty as to the object or intention of such transaction, it is conclusively presumed that the whole transaction of the parties, and the extent and manner of their undertaking, was reduced to writing; and all oral testimony of previous negotiations or statements between the parties, or contemporaneous therewith, are merged in the written instrument, in the absence of fraud or mutual mistake of facts, and this principle is applicable to contracts of insurance."

With reference to the answer to question No. 16 counsel for defendant sets out what the witness would state if permitted to testify as follows: That he had a conversation with Robert Terrell after the papers in question were deposited in escrow, and that the plaintiff Terrell referred to the fact that he had examined the original papers at the bank and that Robert Allan's indorsement was on the back of said note, and that there would therefore be no question in regard to the second mortgage not being good. We are at a loss to see how the defendant could reap any benefit from the admission of this testimony or could suffer any injury from its exclusion. The admitted facts in this case are that all the papers were executed and deposited in escrow with the bank; that Robert Allan's general indorsement was on the back of said note and also subscribed to the assignment of the mortgage. Whether or not the personal indorsement of Allan made this note collectable without regard to the security would seem to be entirely beside the question, and so far as we can see the expression of an opinion by the plaintiff on that subject would not tend to impeach him nor would it tend to prove or disprove any issue in this case.

The next contention of the defendant to be considered will be his contention No. 1, that is, that the court erred in refusing to allow him to amend his answer. It is quite true that our courts favor the allowance of amendments to pleadings, and that in furtherance of justice they are allowed under many varying circumstances. The circumstances in the present case, however, are exceptional. In the first place, it appears that the entire engagement of the parties to this transaction was reduced to writing. Robert

Terrell immediately upon the conclusion of the contract executed and delivered his deed to Allan for the real estate referred to and put him into possession of the same and he remained in possession thereafter. The written contract between the parties contained the provision:

"Papers to be made out and held in the Security State Bank until an abstract showing good clear title is furnished."

The words "made out" in this connection could have meant nothing save the indorsement of the note and the execution of the assignment on the back of the mortgage, all of which was done at the time. The note was a completed document and required only an indorsement. The mortgage was complete and it only required the assignment, and so complete were these papers that even the assignment of the mortgage carried with it in terms the assignment of the accompanying note, but as a matter of fact the note too bore the general indorsement of Allan. It should be added also that the assignment was acknowledged before a notary public under the very date of the contract, December 29, 1923. The note was indorsed on the back:

"For value received hereby guarantee the payment of the within note at maturity, or at any time thereafter, or any renewal of the same, together with 10 per cent. of the amount as attorney fees, if suit be instituted hereon, and hereby waive protest, demand and notice of nonpayment thereof.

"Robt. Allan."

The note and mortgage aforesaid were placed in an envelope on which the following was indorsed:

"To Security State Bank, Guthrie, Okla.

"Please hold the enclosed papers until Robert Terrill delivers to Robert Allan clear abstract of title to lots 1 and 2, block 38, Capital Hill, except 1923 taxes, then turn papers to Mr. Terrill.

"(Signed) Robt. Allan."

There was nothing ambiguous, unclear, or uncertain about these papers. They were complete in every detail. When this title was cleared by Terrell he was entitled immediately to the papers held in escrow by the bank. Allan had parted irrevocably with these papers, the note and mortgage. When Terrell performed by clearing the title they were his papers. They were always his papers, subject only to the performance of the condition. The papers were to be turned over by the bank to Terrell upon the performance of this condition and not to Allan, and if this had been done Allan could have

made no change in these papers. He had no more right to change the papers which were then complete than Terrell would have had to change the terms of the deed which he had already given to Allan for the real estate. The purpose of putting the papers into escrow is to remove the same from the control of the parties, otherwise there would be no object in having an escrow holder. Any change of these papers by Allan after the performance of the condition without the consent of Terrell was wrongful and no right could possibly arise out of the wrongful act of Allan in dealing with them as his own, rather than as the property of Terrell. Terrell's right became absolute and all Allan's rights were lost in the premises. Neither party could recall or change these papers in any way.

And yet when these parties went to the bank, ostensibly in good faith, not for the purpose of making any assignment, for no assignment was needed, but to have the papers delivered, Allan seized the opportunity upon a specious pretense of retracing his pencil signature with ink to write in the words "without recourse," and thereby change the entire transaction and nullify what had already been done. This conduct is in substance admitted by the opening statement of counsel for defendant by his motion to amend his answer and also by the testimony of defendant in the case. And, having gotten the plaintiff's deed to the real estate and having stricken out his own general indorsement on the note, his answer to the plaintiff is, "Take it, or leave it."

In his answer to plaintiff's petition defendant denies that he indorsed said note unconditionally, and uses the following language:

"Defendant states that said note was indorsed without recourse, and such was the purpose and intent of both parties to the transaction, and that the note was so indorsed without recourse. * * * The defendant, Robert Allan states that the allegation in plaintiff's petition that he changed his indorsement after the trade had been consummated is untrue."

This pleading raised the issues as to whether or not the note was indorsed generally or without recourse and the plaintiff prepared his case upon the issue thus raised.

Section 5057, C. O. S. 1921, provides:

"In cases of uncertainty not removed by the preceding rules, the language of a contract should be interpreted most strongly against the party who caused the uncertainty to exist. The promisor is presumed to be such party, except in a contract between a public officer or body, as such, and a private party, in which it is presumed that all uncertainty was caused by the private party."

The defendant had laid out the theory and ground of his defense. The trial was in progress, and the proof appearing to be overwhelming against him, he asks to change his line of defense and his theory by setting up mistake, inadvertence, etc. In the allowance of amendments the rights of all parties have to be considered. Neither the trial court nor the Supreme Court will allow a litigant to change the theory of his suit or defense where to do so is distinctly unfair to his opponent.

It is the settled policy of the law that the trial judge has a wide discretion in the matter of amendment and in reviewing such action his exercise of power in either allowing or denying the same will not constitute error, unless there is a clear abuse of this power. Taking into consideration all the facts and circumstances of this case, the written contract, the assignment of the note and mortgage, the conduct of the parties in passing title to the properties, the escrow agreement under which the bank held the papers, the pleadings in the cause, and the circumstances and conduct of the parties with reference to the changing of the terms of the indorsement of the note in question and the time at which the amendment is sought and the nature of the amendment, we cannot say that the trial court abused this discretion which the law wisely reposed in him.

"It is not an abuse of discretion for a trial court during the trial of a cause to refuse an amendment to an answer, which sets up a new and additional defense, where no reason is given therefor other than that the trial court refused to allow the evidence desired to be introduced under a general denial." Piper v. Choctaw Northern Townsite & Imp. Co., 16 Okla. 436, 85 Pac. 965. (See, also, Dill v. Malot, 66 Okla. 74, 167 Pac. 219.)

Under the third contention we seem to find no ground for the contention that the verdict is contrary to the law. For all of which reasons it is considered that the judgment of the lower court should be and same is hereby affirmed, and it is so ordered.

TEEHEE, REID, LEACH, and FOSTER, Commissioners, concur.

By the Court: It is so ordered.

Note.—See under (1) 21 C. J. p. 883, §28; p. 889, §34. (2) 8 C. J. p. 910, §1194. (3) 4 C. J. p. 71, §1661; 2 R. C. L. p. 133; 1 R. C. L. Supp. p. 704; 4 R. C. L.

Supp. p. 83; 5 R. C. L. Supp. p. 72. (4) 22 C. J. p. 1098, §1459; p. 1189, §1590; anno. 17 L. R. A. 270; 10 R. C. L. p. 1016; 2 R. C. L. Supp. p. 1139; 4 R. C. L. Supp. p. 686; 5 R. C. L. Supp. p. 582; 6 R. C. L. Supp. p. 635. (5) 3П Cyc. pp. 367, 368, 399, 425; 21 R. C. L. p. 573; 4 R. C. L. Supp. p. 1421.