## KANSAS CITY FLOWER MARKET CO. et al. v. FURROW et al.

No. 21587. Opinion Filed June 6, 1933.

Rehearing Denied Oct. 17, 1933.

Harry F. Brown, for plaintiffs in error.

McGuire & McGuire, for defendants in error.

BUSBY, J. This action was commenced in the district court of Logan county on the 3rd day of November, 1928, by the Kansas City Flower Market Company, a corporation, as plaintiff, against John W. Furrow, Emily Banks Furrow, and Elizabeth E. Furrow, and F. E. Cullison, copartners, doing business under the trade name of Furrow & Company, defendants. The parties appear in this court in the same order in which they appeared in the trial court, and for the purpose of convenience will be referred to as plaintiffs and defendants, respectively.

Petition filed by the plaintiff, after alleging the corporate existence of the plaintiff and the partnership of the defendants, stated, in substance, a cause of action on account for rose plants sold and delivered by the plaintiff to the defendant on or about the 17th day of April, 1928. Plaintiffs prayed judgment for the sum of $589.40, with interest, same being the amount claimed to be due and unpaid. Itemized and verified statement of account was attached to the petition.

The defendants joined issue by filing an answer and cross-petition. The answer consisted of a general denial and the cross-petition alleged, in substance, that the plaintiff in this action was the successor in business of one John Stevens, a wholesale florist in Kansas City, Mo., and that the plaintiff had purchased the business of John Stevens on or about the 1st day of March, 1928; that as a part of the consideration for said business the plaintiff had assumed the obligations of the said John Stevens previously incurred in connection with the business. The defendants then alleged that on or about the 18th day of December, 1927, they ordered from the said John Stevens about 20,000 rose plants, which order was accepted by John Stevens on the 6th day of January, 1928. That, by virtue of the acceptance of the order, John Stevens became legally bound to deliver the personal property thus contracted for, and that by virtue of the alleged agreement between John Stevens and the plaintiff the plaintiff became bound to perform the obligation incurred by John Stevens under the contract to sell and deliver the 20,000 rose plants. The defendants then alleged that the rose plants mentioned in the petition of the plaintiff were delivered in partial performance of the obligations created by the contract between John Stevens and the defendants; that the plaintiff had broken such contract in part by failing to deliver the remaining portion of the rose plants. The defendants allege damages in the sum of $1,048.45 by reason of the failure of the plaintiff to deliver all of the rose plants contracted to be delivered by John Stevens, pleading in connection with their claim for damages a number of special elements and facts which need not be set forth in detail. They pray for judgment in accordance with the allegations of their cross-petition.

A reply was filed to their answer and

cross-petition in which the plaintiff denied generally the material allegations and statements thereof, and in addition specially denied that it had at any time assumed the obligation of John Stevens or agreed that it would fulfill any order or contract made by him.

On the issues thus joined, the cause was tried by the court on the 20th day of November, 1929, the jury having been waived by consent of the parties.

On the day before the trial was commenced, a verified motion for continuance was filed by the defendants on the ground that John Stevens was a material witness in their behalf and that it was impossible for him to be present at the trial. The motion for continuance set forth a state of facts which it was alleged would be established by the testimony of John Stevens if he were present. The material portion of this purported testimony will be discussed in the subsequent portion of this opinion. The trial court overruled the motion for continuance with the understanding that that portion of the same which purported to recite the testimony that would be given by John Stevens might be treated as a deposition. After hearing the evidence in the cause, a judgment was rendered in favor of the plaintiff on the cause of action set forth in the petition for the sum of $660.12. From this portion of the judgment no appeal has been taken. The court also rendered judgement in favor of the defendants upon their cross-petition for the sum of $1,480.95 and decreed that the costs should be equally divided between the respective parties. The plaintiff filed a motion for a new trial, which was overruled, and from the order overruling the motion for a new trial and the judgment in favor of the defendants on their cross-petition the plaintiff has perfected an appeal to this court. The case has been presented here on briefs and oral argument.

Various assignments of error contained in the petition in error have been grouped by the plaintiff under four propositions, the first of which is that the evidence of the defendants failed to show any obligation on the plaintiff corporation on account of the John Stevens order. Consideration of this contention on the part of the plaintiff necessitates a brief review of the evidence relied upon by the defendants to establish liability on the part of the plaintiff to carry out the obligations created by the contract for the delivery of rose plants entered into between John Stevens and the defendants. It appears that subsequent to the

time that the order for 20,000 rose plants was made and accepted, John Stevens wrote a letter to the defendants on the 17th day of February, 1928, advising them that he could not fill the order. That letter reads as follows:

> "John Stevens,
> "Wholesale Florist
> 801 E. Lexington Ave.
> "Independence, Mo. 2-17-1928.

"Mr. John Furrow,

"Dear John:

"I have been away off and on for the past four weeks in regard to the sale of my greenhouse which has not yet been settled. Before going I hired a man to take care of my grafting and gave orders on the Briarcliff, I wanted for you, but something happened to them and I would not send them to you, or any of the rest of your order for that matter. I know you are starting in on growing roses, and these plants are not the kind you should have. I was in Chicago and they have good plants there. A. F. Amling or Bassett Washburn have good plants, also Hill in Richmond, Ind. I am more disappointed than anyone as it has cost me plenty. Write in here and cancel your order so in case I do sell it will (not) be on the books and they won't send you any of these plants for I know you would not want them. I expect to see you before long. I am telling you this early so you can have time to order elsewhere.

> "Yours truly
> "John."

On the 28th day of February, 1928, John Stevens wrote another letter of a similar purport, which reads:

> "John Stevens Letterhead

"Furrow & Co.

"Friend John:

"I sold my greenhouse & store a few days ago and the new firm told me today they will need all the plants I grafted for their new place under erection in North Kansas City, including the plants I had for you. I hope you will have no trouble in getting plants elsewhere. **I was real proud of your order John and it hurts me not to see it taken care of.** I want to thank you for all past favors in helping me along with my business. If I am ever in your city I will call and see you. Right now I don't know just what I am going to do.

> "Thanking you again, I remain,
> "Yours very truly, John Stevens."

From an examination of the two letters from John Stevens to the defendants it appears that John Stevens did not intend to fill the contract for 20,000 rose plants which he had previously made, and that he had made no agreement with his successor in business to fill this order. However,

notwithstanding the apparent conflict of such testimony with the written letters of John Stevens, the defendants made an affidavit in their motion for continuance that John Stevens would testify in substance (we quote from the affidavit) "that it was further and additionally agreed by and between the said plaintiff herein, as aforesaid, and the said John Stevens, that the said plaintiff herein or its successors would assume all obligations of the said John Stevens, in reference to any order for flowers or plants, which he had on hand at the said time, or had contracted to fill, and that they would fill the said order according to the terms and tenor thereof, and relieve the said John Stevens of any obligation on his part to fill the same, and that they would fully and completely carry out all of his contract in relation thereto, and that John Stevens did transfer and assign to the said plaintiff, as aforesaid, all of his right and interest in and to all of his said contractual orders, including the one which he had with the said defendant, as aforesaid."

This affidavit was treated as a deposition, and the foregoing portion thereof was offered and introduced as a part of the evidence over the objection of the plaintiff. If competent and properly admissible, this testimony would support a judgment in favor of defendants on their cross-petition. Staver Carriage Co. v. Jones, 32 Okla. 713, 123 P. 148. The record shows, however, that the contract by which John Stevens sold his flower business to the plaintiff was in writing. Plaintiff urged to the trial court and contends here that the testimony of John Stevens that there was an oral understanding that the plaintiff would assume the obligation of John Stevens was inadmissible by reason of the parol evidence rule announced by this court, and which is: Where the terms of a contract are reduced to writing and the same are clear, explicit, and unambiguous, a contract must be permitted to speak for itself, and the same cannot be, by the court, at the instance of one of the parties, altered or contradicted by parol evidence, unless in the case of fraud, accident, or mistake. Allen v. Terrell, 126 Okla. 251, 259 P. 268, and authorities cited therein. This rule applies to written contracts of sale. 23 R. C. L. 1389.

The brief of the defendants is not clear as to the theory upon which they believed this parol evidence was admissible. However, counsel for the defendants in oral argument advised the court that in his opinion it was admissible upon the theory that there ex-

isted in the contract a latent ambiguity, which is permissible to explain by parol testimony. He did not, however, point out the particular portion of the contract relied upon by him as creating the latent ambiguity. The contract in question is of considerable length and concerns many details which have no connection whatever with this case, and we deem it unnecessary to incorporate the same herein. We have examined the contract, however, and find its terms and conditions are clear, concise, and unmistakable in meaning and contain no ambiguity with reference to the assumption of obligation which would justify the admission of parol testimony. Therefore, we hold that this testimony by John Stevens was in violation of the parol evidence rule and should have been excluded upon the objection of the plaintiff.

It is also urged by the defendants in support of the judgment obtained by them on their cross-petition that a certain subsequent transaction between the defendants and the plaintiff herein created an obligation on the part of the plaintiff to carry out the contract made by John Stevens with the defendants. It appears that the defendants did not answer the letters written to them in February by John Stevens when he advised them of the inability to fill the order, but a short time after that John Furrow, one of the defendants, made a trip to Kansas City, arriving there after the plaintiff had taken charge of the business of John Stevens. He had a conversation with the officers and representatives of the company with reference to the order that the defendants had previously made. The testimony of Mr. Furrow with reference to this conversation expresses the import thereof in the light most favorable to the defendants. We quote his testimony:

"Q. When you first told Michelsen about the Stevens order, what did he say? A. He said he didn't know about the order, and he didn't know about how many rose plants they had. And when we went to North Kansas City to talk with Mr. Spanbauer, they didn't know for sure what they could supply."

In another portion of his testimony the witness Furrow stated:

"Q. Did they agree to fill the order or not? **As much as they could,** but they couldn't determine the number of plants they could supply until Mr. Spanbauer said he would go out and look the stock over and see how many they could supply and wire me at Louisville. Q. Then if I understand

the agreement you made with them at that time, they were to let you know how much of this order they would fill and how much they would not fill. A. Yes, sir." (Emphasis ours.)

It appears that pursuant to this conversation and in order to advise the defendants how many of the rose plants that plaintiff would be able to supply, plaintiff on March 12th wired the witness Furrow at Louisville, Ky., as follows:

"John Furrow, Hotel Brown, Louisville, Ky.

"Can furnish four hundred butterfly April. Seven hundred butterfly nine hundred fifty rapture nine hundred thirty Templar for June. All we can possibly do in regard to order you gave John Stevens last fall. Frank Spanbauer, Charge John Stevens, Co."

It is urged by the defendants in connection with the conversation above referred to and the telegram set forth, that by virtue of this conversation and telegram the plaintiff obligated itself to perform all of the obligation assumed by John Stevens by virtue of the order for 20,000 rose plants. We do not so interpret the meaning and purport of this conversation and telegram. At no place did the plaintiff or its representatives agree to fill the order made to John Stevens. On the contrary, all that the plaintiff agreed to do was to supply such portion as it was able to supply and to advise the defendants what amount it would supply. The defendants were advised of the amount of plants that plaintiff would agree to furnish by means of the telegram above set forth, and there was no obligation to furnish plants in excess of the amount which they agreed to furnish in that telegram. These plants were furnished and formed the basis of the cause of action stated in their petition. It is our opinion from an examination of the record and an analysis of the proof that the evidence is wholly insufficient to establish the existence of any liability on the part of the plaintiff to furnish the 20,000 rose plants ordered from John Stevens, and that the trial court was in error in overruling the demurrer of the plaintiff to the evidence of the defendants in support of their cross-petition and in entering judgment in favor of the defendants on their cross-petition. There are other assignments of error urged by the plaintiff in its brief which we deem it unnecessary to consider by reason of the views we take on the first proposition urged by it.

For the reason stated, the judgment of the trial court in favor of defendants on their cross-petition is hereby reversed, and the cause is remanded, with directions to the trial court to enter judgment denying the defendants any and all relief on their cross-petition and assessing all costs of the action to the defendants as a part of the judgment which exists in favor of the plaintiff.

RILEY, C. J., CULLISON, V. C. J., and SWINDALL, ANDREWS, McNEILL, OSBORN, BAYLESS, and WELCH, JJ., concur.