DAVID RUSSELL v. THE DETROIT MUTUAL FIRE INSURANCE COMPANY.

*Fire insurance—Mutual insurance companies—Authority of agent— Estoppel—Damages—Charge to jury.*

1. Whether How. Stat. § 4247, which limits insurance by mutual fire insurance companies to buildings that constitute detached risks in villages and cities, refers to *incorporated* or *platted* villages, is not decided, the Court not being *inclined* to so limit it; but the question is held unimportant where the application located the building in the "*town* of Sumpter, south side of Main street," and the word "village" was substituted in the policy, issued at the home office, such act estopping the company from denying that the *place described* is a village because neither platted nor incorporated as such.

2. It seems to be settled by the weight of authority that there is no distinction between mutual and stock fire insurance companies as to their responsibility for the acts of their agents in taking applications for insurance.

3. A policy-holder in a mutual fire insurance company does not become a member until he receives his policy; and if there is

no limitation of the agent's authority brought home to the assured, he must be considered the agent of the company in receiving the application, and his acts and knowledge are the acts and knowledge of the company.

4. In this case it is held that while the court should have limited the plaintiff's recovery to the actual *cash* value of the property, that being the limit of the liability of the company under its charter, the omission was error without prejudice, inasmuch as the jury, in answer to special questions, fixed the value of the property at such a sum as prevented them from finding a verdict for *less* than the insurance and interest.

Error to Wayne. (Hosmer, J.) Argued April 18, 1890. Decided May 2, 1890.

*Assumpsit* on an insurance policy. Defendant brings error. Affirmed. The facts are stated in the opinion.

*Conely, Maybury & Lucking,* for appellant, contended:

1. Our statute recognizes incorporated and platted villages; citing How. Stat. §§ 1417, 2768, 2983, and the place where plaintiff's store was located was neither,—it was simply an ordinary country cross-roads; and, the property not being in a village, plaintiff cannot recover, the contract being *ultra vires*, and void; citing *Eddy v. Ins. Co.*, 72 Mich. 651.

2. Defendant being a mutual company, plaintiff was bound to know its rules and regulations as to membership, and as to the effect of a failure to disclose as to incumbrances, and that they were binding upon him. Tafft was Russell's agent in making the application, and he cannot excuse the misrepresentation made to defendant by saying that Tafft was defendant's agent; citing *Brewer v. Ins. Co.*, 14 Gray, 203, 209; *Hale v. Ins. Co.*, 6 Id. 169; *Smith v. Ins. Co.*, 24 Penn. St. 325; *Mitchell v. Ins. Co.*, 51 Id. 411; *Ins. Co. v. Stoy*, 41 Mich. 395; *Becker v. Ins. Co.*, 48 Id. 611; May, Ins. § 146; Wood, Ins. § 509; Angell, Ins. §§ 10, 146.

*Dickinson, Thurber & Stevenson* and *Charles S. McDonald,* for plaintiff, contended for the doctrine stated in the opinion.

Morse, J. The plaintiff sued upon a policy issued by

defendant, March 2, 1888, for one year.    The insurance was $1,000 upon a two-story frame building occupied for general store purposes, and described in the policy as—

" Situated on the south side of Main street, in the village of Sumpter, Wayne county, Michigan."

Also, $200 on the store fixtures, and $200 on general stock of merchandise.    August 5, 1888, the building burned, and was a total loss.    The defenses insisted upon in this Court are that the property was not located in a village or city, and that there was a mortgage upon the premises at the time of the taking of the insurance, while the application stated there were no incumbrances.

It appears without contradiction that the application— the answers to the questions therein—was filled out by one Hiram Tafft, who solicited the insurance on behalf of the defendant, being employed as such solicitor by the insurance company.    He had no authority to issue policies.    He testifies that he filled out the application, relying upon his own knowledge and information, and the plaintiff signed it.    He did not ask the plaintiff the question concerning incumbrances.    Witness answered the question in relation thereto, "No," because the expiring policy (which plaintiff held in another company, and which witness had before him) did not say anything about paying the loss to a mortgagee.    He did not think it necessary to inquire about mortgages except where loss was to be made payable to the mortgagee.

Plaintiff testified that when Tafft insured him, two years before, in the Continental Insurance Company, he asked plaintiff whether there was a mortgage on the property, and plaintiff told him there was one for $600 on the acre of ground where the store was, and that it also covered two acres on the opposite side of the street, including a saw-mill.    Tafft asked him no questions about it

when the application was made for insurance in defendant company.

The defendant is a corporation, organized under Act No. 82, Laws of 1873, being an act to provide for the incorporation of mutual fire insurance companies, and defining their powers and duties, approved April 15, 1873, as amended by subsequent acts (How. Stat. chap. 132); and it is only authorized to insure buildings—

"That constitute detached risks in villages and cities." How. Stat. § 4247.

Much testimony was given upon both sides as to the character of the place—a four corners—where this store situated. The court instructed the jury that it was a village, in the sense of the statute, being guided by the definition of "village" as given by Webster, to wit:

"An assemblage of houses in the country, less than a town or city, and inhabited chiefly by farmers and other laboring people."

It is the contention of defendant's counsel that the statute confines the risks to *incorporated* villages, or at least to those that are *platted*. We are not inclined to so limit it; but we think, from the facts of this case, that the question becomes unimportant. The application described the property as situate in the " *town* of Sumpter, south side of Main street." When the policy was issued, the word "village" was substituted at the home office of the company for the word "town." In no sense can the plaintiff be said to be responsible for this. He made no representation by word of mouth, nor by the signing of the application, that his property was situated in a village. He is not at fault if it is not a village. The defendant called this hamlet or collection of stores and houses at this four corners a "village," and under the circumstances it is now estopped from denying that it is a village because it is neither platted nor incorporated as

such. The testimony shows this place to be a village in the common acceptation of the term. The company accepted this common understanding for the purposes of insurance under its charter, and it cannot now be permitted to insist upon a higher standard. If the property insured had stood alone in the country the case might have been different; but when, as the counsel for defendant admit, the question as to whether it was village property was so close that it ought to have been submitted to the jury upon the testimony, it is no more than justice that the defendant take its own definition, rather than that it be left to others to be determined largely upon opinions.

As to the second defense, it is claimed by the plaintiff that he did not read the application signed by him; that Tafft knew there was a mortgage on the premises; that Tafft was the agent of the company, and his knowledge was the knowledge of the defendant; and that therefore, in taking the application and issuing the policy as it did, the defendant cannot complain of the statement in the application that there was no incumbrance upon the property. But defendant's counsel, while conceding that this claim might be good if the defendant was a stock insurance company, insist that in a mutual company each person insured, being a member thereof, is bound to know the rules and regulations, and that they are binding upon him; and that in making the application Tafft was the agent of plaintiff, as well as of the company, and that he cannot excuse the misrepresentations made in the application by saying that Tafft was the agent of the defendant. The answer of plaintiff's counsel to this contention is that, under the law, plaintiff did not become a member of the defendant corporation until he received his policy, and that during the negotiations for the insurance a mutual company occupies no better or other posi-

tion than one organized on the stock plan, and cannot profit by a contract induced by the fraud of its agent; that Tafft was therefore the agent of defendant, and not of plaintiff, when he wrote and forwarded the application.

It will be seen that the question to be determined is as to the agency of Tafft. Whom did he represent in making and taking this application? The rule now generally adopted by the courts, and the reasons for it, are well stated by Mitchell, J., in *Kausal v. Ins. Co.*, 31 Minn. 20, as follows:

"On principle, as well as from considerations of public policy, agents of insurance companies, authorized to procure applications for insurance, and to forward them to the companies for acceptance, must be deemed the agents of the insurers, and not of the insured, in all that they do in preparing the application, or in any representations they may make to the insured as to the character or effect of the statements therein contained. This rule is rendered necessary by the manner in which business is now usually done by the insurers. They supply these agents with printed blanks, stimulate them by the promise of liberal commissions, and then send them abroad in the community to solicit insurance. The companies employ them for that purpose, and the public regard them as the agents of the companies in the matter of preparing and filling up the applications,—a fact which the companies perfectly understand. The parties who are induced by these agents to make applications for insurance rarely know anything about the general officers of the company, or its constitution and by-laws, but look to the agent as its full and complete representative in all that is said or done in regard to the application; and, in view of the apparent authority with which the companies clothe these solicitors, they have a perfect right to consider them such. Hence, where an agent to procure and forward applications for insurance, either by his direction or direct act, makes out an application incorrectly, notwithstanding all the facts are correctly stated to him by the applicant, the error is chargeable to the insurer, and not to the insured." Bac. Ben. Soc. § 153, and cases cited; *Crouse v. Ins. Co.*, 79 Mich. 249, and Michigan cases there cited.

This rule applies to mutual as well as stock companies. The assured does not become a member of the mutual company until he receives his policy.

"In the act of insurance he is not so [a member], but a stranger, and he becomes a corporator only by the consummation of that fact; and this does not convert the previous act of examination and description by the agent of the company into his act, and change it into a representation by him." Bac. Ben. Soc. §§ 156, 158; *Protection Co. v. Schell,* 29 Penn. St. 31; *Kausal v. Ins. Co.,* 31 Minn. 23; *Ins. Co. v. Cooper,* 50 Penn. St. 331; May, Ins. §§ 139, 140; *Ins. Co. v. Woodworth,* 83 Penn. St. 223; *Ellenberger v. Ins. Co.,* 89 Id. 464; *Nassauer v. Ins. Co.,* 109 Id. 507; *Bebee v. Insurance Co.,* 25 Conn. 51; *Bank v. Ins. Co.,* 31 Id. 517; Wood, Ins. (2d ed.) §§ 408, 409.

It seems to be settled by the weight of authority that there is no distinction between mutual and stock companies as to their responsibility for the acts of their agents in taking applications for insurance; and, upon principle, there is no good reason why there should be any. The assured does not become a member of the mutual company until he receives his policy, and there is generally no acquaintance upon his part with the charter or by-laws of the corporation when he makes his application; and the agents are fully as active and persistent, if not more so, in obtaining insurance as in stock companies; and there is no good reason for holding that a person must deal with such agents at his peril that does not apply equally to stock insurance. Therefore, if there is no limitation of the agent's authority brought home to the assured, the agent receiving the application must be considered the agent of the insurer, and not of the assured, and his acts will be held the acts of the company, and his knowledge-the knowledge of the company. And when, as in this case, he fills out the application himself, and writes an answer that there are no incum-

brances upon the property, when he has been told by the applicant that there is an incumbrance; or if he has knowledge that there is a mortgage upon the premises, and writes such an answer as above, without asking the applicant any questions, or bringing the matter to his attention in any way,—the company will not be permitted to avoid the payment of a loss upon a policy issued on such application, when, as in this case, the assured had no notice of any limitation upon the agent's authority, or of the fact that the existence of a mortgage upon the property insured had any effect upon the validity of his contract of insurance.

It is further claimed that the court erred in his instructions to the jury upon the subject of damages. Section 12 of the charter provides as follows:

"This company will not insure for more than two-thirds of the cash value of any property, and in case of loss will settle and pay all loss or damage, not exceeding the sum so insured, at the actual cash value of loss, to be determined at the time of adjustment of said loss."

It is contended that the court did not limit, as he should have done, the jury to a finding of the "actual *cash* value" of the property. The court, in his charge, did not use the words "actual cash value," as requested by the defendant, but said that the plaintiff had a right to recover—

"Such amount as he lost, such loss as he suffered, or such damage as will compensate him for the loss he has suffered,"—

Not exceeding $200 upon his store fixtures, or $200 upon his general stock, or $1,000 upon the store building; and, if they found the store was not worth $1,000, he could not recover any more than the jury found the value to be; and that the same would also be true as to the stock and fixtures. The verdict was for $1,407.83.

The jury answered special questions to the effect that the store building was worth $1,500 and upwards at the time it was destroyed; the store fixtures, of the value of $400 and upwards; and the merchandise, over $2,500. While the court ought to have used the words "actual cash value" in relation to the loss, as requested by defendant, we are satisfied from the findings above that the damages found by the jury were not enhanced by the failure to do so. Finding, as they did, that the store was worth at least $1,500, the fixtures $400, and the merchandise $2,500, they could not, by their verdict, have assessed the actual cash value of the property destroyed any less than the amount of the insurance, and interest upon it.

The judgment is affirmed, with costs.

The other Justices concurred.