## PENNINGTON v. BIGBIE et al.

No. 17684. Opinion Filed Oct. 25, 1927.

(Syllabus.)

**1. Pleading—Defensive Evidence Competent Under Allegations of Reply Alone.**

Although testimony offered on behalf of a defendant may be incompetent as not within the issues as set out in the allegations of the petition and answer, yet, if under the allegations of the reply said evidence is competent, the plaintiff cannot object thereto.

**2. Appeal and Error—Questions of Fact.**

The question of whether a party should be held accountable for the resale of goods sold at a trustee's sale, said trustee being appointed by the creditors, is a question of fact to be determined by the court or jury, and, when supported by any competent evidence, will not be disturbed on appeal.

**3. Principal and Agent—Agent Accountable Only for Market Value of Property Taken in Part Payment for Stock of Goods.**

Where it appears that personal property was accepted as part payment for the purchase price of a stock of goods, the party accepting said property will be held accountable to those for whom he is acting only for the reasonable market value of said property, no bad faith being shown.

### 4. Same—Accountability of Party Reselling Property Bought at Trustee's Sale.

Where a party is held accountable for the resale of property purchased at a trustee's sale, he should be given credit for all sums properly expended and charged with all sums received in connection with said property.

### 5. Bills and Notes—Attorney's Fee—Allowance of 10 per cent. on Amount Due.

Where a note provides for an attorney's fee of 10 per cent., it is not error for the trial court, in his discretion, to allow 10 per cent. of the amount due. But if the trial court erred in finding the amount due, the attorney's fee should at least be 10 per cent. of what is due and owing on the note.

### 6. Homestead—Village Homestead—Additional Acreage Across Section Line and Outside Village Excluded Where Used as Rental Property.

One who owns several lots in a town or village of this state, on which he has a residence and where he has lived for many years, cannot claim as a homestead, in addition to the lots, 20 acres of land located directly across a section line and highway, outside of the town or village, on which another dwelling house is located and has been rented by the owner for 15 or 20 years, ever since he purchased the same, at all times that he could secure a renter.

Commissioners' Opinion, Division No. 1.

Error from District Court, Carter County; W. F. Freeman, Judge.

Action by J. R. Pennington against Charles H. Bigbie et al., for judgment and foreclosure of mortgage. Judgment for defendants, and plaintiff appeals. Reversed and remanded, with instructions.

Potterf, Gray & Poindexter, for plaintiff in error.

Brett & Brett and J. A. Bass, for defendants in error.

FOSTER, C. This is an appeal from the district court of Carter county. The parties in this court appear as they did in the court below. An action was brought by J. R. Pennington to foreclose a mortgage against Charles Bigbie and wife in the sum of $2,000; and another action was brought against W. W. Baber and wife to foreclose a mortgage in the sum of $1,000 The petitions in both cases are the general allegations for the foreclosure of a mortgage. Both of the defendants filed answers in which they denied generally the allegations of the plaintiff's petition, and further in their answers denied that there is anything due on the notes sued upon, for the reason that the same have been paid in full, in that the defendants assigned to the plaintiff certain interest in a stock of goods belonging to the Brock Trading Company, and that the same was accepted by Pennington in full payment of the indebtedness.

In plaintiff's reply he alleges that the two notes sued upon were given as security for a note in the sum of $3,000, executed by the Brock Trading Company, and admits in his reply that certain payments have been made upon the note of $3,000, originally given by the Brock Trading Company, and that there is now due about the sum of $1,750, but that he brings this action for the entire amount for the use and benefit of himself and for the use and benefit of other persons that may have some proper interest therein.

The two cases were, by agreement, consolidated and tried together. The evidence on behalf of the plaintiff consisted of the introduction of the notes and mortgages and the burden of proof then shifted to the defendants, who introduced, in substance, the following testimony:

That the Brock Trading Company was conducting a business in Lone Grove, Carter county, in the year 1921, and prior thereto; that the company was financially embarrassed during said year, and at a meeting of the creditors it was decided that the creditors would accept 50 cents on the dollar for their indebtedness if the Brock Trading Company would secure the balance, payable the following fall. The Brock Trading Company made a proposition to the plaintiff whereby it would pay him 10 per cent. if he would secure or furnish the amount of money sufficient to pay the 50 per cent. settlement with the creditors. This the plaintiff refused to do, for the reason that it was too much. Later, by agreement with the creditors, a settlement was made for 25 cents on the dollar, and Pennington, plaintiff herein, furnished the money with which to pay the creditors and took a note in the sum of $3,000 from the Brock Trading Company to repay him for the money expended in the settlement with the creditors.

The testimony further shows that Pennington paid out to the creditors $2,280. The notes sued on in this case, one for $2,000 given by Charles Bigbie, and one for $1,000 given by W. W. Baber, were to secure a $3,000 note of the Brock Trading Company.

Under this settlement the business was conducted for several months, but the Brock Trading Company was only able to pay Pennington the sum of $50, and the creditors

again agreed among themselves and with the Brock Trading Company that W. M. King should be appointed as trustee, who was employed by the Pennington Grocery Company, of which plaintiff was president. That after King was appointed as trustee, there is evidence to the effect that one Whit Carroll offered to buy the assets of the Brock Trading Company for the sum of $3,200, and that on the advice of the plaintiff, Pennington, this was refused, at which time he promised the defendants that if the goods were sold at public auction he would buy them in and resell them for enough to pay all the creditors, including himself, and thereby relieve the defendants from any liability on their notes and mortgages sued on in this cause; that thereafter the assets were sold at public sale by the trustee, and Pennington purchased them for the sum of $1,811, which sum of money was distributed among the creditors, Pennington receiving $1,348.53.

The plaintiff objected to all testimony introduced by the defendants concerning the original consideration for the notes, on the ground that the same was not within the issues, since in their answer they had alleged a payment in full satisfaction of the notes and had not in any way alleged a failure of consideration.

The testimony further shows that Pennington sold the stock of goods purchased at the trustee's sale to Whit Carroll for the sum of $2,250 in cash and a team of mules. The plaintiff contends that the team of mules was taken in by Pennington at $250, making a total amount received of $2,500.

Plaintiff contends, and the testimony is practically uncontradicted, that in his deal with Carroll for the sale of the stock of goods he offered to sell the same for $2,500. Carroll refused, but offered him $2,250 and a team of mules, and after some talking back and forth, Pennington finally accepted the $2,250 and the team of mules. Carroll said that he put in the team of mules at $250. The plaintiff offered to prove that the team of mules was not worth more than $100, or at least considerably less than $250. This the court refused.

The plaintiff in rebuttal denied the promise to buy the stock of goods and resell them for a sufficient amount to relieve the defendants of their liability, and further testified that he had had an agreement with the officers of the Brock Trading Company whereby he was to receive 10 per cent. of the total indebtedness as his commission for paying out to the creditors the 25 per cent., it being the contention of the Brock Trading Company that he was to receive only 10 per cent. of the amount actually paid out.

In addition to the other defenses, the defendant Baber claimed that the land on which his mortgage had been executed, in payment of his note, was a homestead, and that his wife had not joined in the mortgage. The testimony on this point shows, in substance, that Baber owned six lots in the town of Lone Grove, on which his house was located where he lived; that just across the main traveled road he owned 20 acres on which another house was located, and which was rented most of the time by Baber. The town of Lone Grove had been incorporated, and until 15 or 18 years ago it had a town government, but the same had been discontinued, although no action had been taken to dissolve the corporation. The officers had ceased to function and the town had ceased to elect new officers. The town consisted of from 56 to 60 dwelling houses, three or four stores, filling station, garage, post office, depot, and other buildings.

This case was tried by agreement to the court without the intervention of a jury, and at the close of the testimony the court entered judgment in favor of Pennington for $89.39, together with interest and costs, making a total of $104.98, and $10.49 as attorney's fee, and refused a foreclosure upon the property of Baber, which judgment he arrived at in the following manner:

That on March 10, 1921, the Brock Trading Company delivered to the plaintiff its note for $3,000, and in order to secure the payment of said note, the defendants Bigbie and Baber executed and delivered their notes for the sum of $2,000 and $1,000, respectively, bearing interest at the rate of 8 per cent., and executed their mortgages on certain property belonging to said defendants; that the plaintiff paid out on the note of the Brock Trading Company the sum of $2,280, with interest to November 29, 1921, of $101.39; that there was an agreement that the plaintiff was to be paid a fee or bonus of 10 per cent. on the amount paid out, amounting to $228, making a total of $2,639.39; that there was a credit on said note for the sum of $50, and that the plaintiff received from the sale of the stock of goods the sum of $2,500 as a credit on the amount due, making a total credit of $2,550, leaving a balance of $89.39 with interest at the rate of 8 per cent., making a total of $104.98; and further ordered that no foreclosure be had on the property of Baber for the reason that the same was a homestead. To this judgment the plaintiff excepted and filed his

motion for a new trial, which was overruled, and brings his appeal to this court.

In plaintiff's motion for a new trial and in his petition in error, he sets up 17 assignments of error, but they are all presented under six propositions, which he presents in his brief as follows:

(1) That the court erred in admitting evidence on the issue as to the original consideration of the note.

(2) That the court erred both in law and in fact in holding plaintiff accountable for profit realized on the resale of the assets of the Brock Trading Company.

(3) That the court erred in holding the plaintiff liable for $250, the value of the team of mules.

(4) That the calculation of the amount due, even under the theory adopted by the court, was erroneous.

(5) That the court erred in concluding that the property mortgaged by Baber was a homestead.

(6) That the court erred in fixing the amount of attorney's fees, in that the same were too small.

The first proposition presented to this court is, whether or not the lower court erred in admitting testimony for the reason that the same was not within the issues.

The petition of the plaintiff and the answer of the defendant are perhaps not sufficient to justify the introduction of testimony as to the original consideration of the note sued upon, and the plaintiff for that reason objected to all the testimony and saved exceptions.

However, we do not believe that it was error for the court to admit said testimony, for the reason that in the reply of the plaintiff he alleges that he brings this suit "for the entire amount owing upon the note sued upon for the benefit, first, for himself; and second, for the benefit of any other persons that may have a proper interest therein."

By this allegation contained in the plaintiff's reply, we believe that he opened up the question of the consideration of the notes, and that the testimony introduced by the defendants, and objected to by the plaintiff, was proper testimony under this allegation. The plaintiff practically makes himself a trustee for the creditors of the Brock Trading Company, and he cannot be heard to object to testimony which, under the allegations of his reply, is competent.

The next proposition is, Did the court err in holding plaintiff accountable for the profits realized from the sale of the assets of the Brock Trading Company?

Under this proposition, we believe that, since a jury was waived, enough testimony was presented to the court to justify this finding. It has been the uncontradicted holding of this court, in so many cases that it is unnecessary to cite them, that if a case is tried to a court without a jury, the general finding of fact in favor of one of the parties will be given the same weight as a verdict of the jury, and, if there is any competent evidence to support said finding, same will not be disturbed. We believe, after a careful examination of all the testimony, that there was sufficient evidence that the plaintiff was acting for the Brock Trading Company, and the court was justified in holding him accountable to the Brock Trading Company for a resale of the assets.

The third proposition presented is, Should the plaintiff be charged even if he is held accountable for the resale of the property with the sum of $250 for the team of mules included in the trade?

We are of the opinion that, under the circumstances set out in the testimony, it was never the intention of the plaintiff to take the team of mules for the sum of $250. Carroll refused $2,500 cash and offered as a counter proposition that he would pay $2,250 cash and the team of mules, clearly indicating that Carroll did not consider the team of mules worth the sum of $250. The plaintiff finally accepted the proposition, but there is no indication that he accepted it on the basis of $250. We, therefore, hold that the court erred in excluding the testimony as to the reasonable market value of the mules; and, since the plaintiff is to be charged with the resale of the property, we believe he should only be charged for whatever the testimony shows the reasonable market value of the mules to be.

Did the court err in its calculation even under its own finding? We are inclined to the theory that it did. The court held that the plaintiff must account to the Brock Trading Company for the resale of the property; that, in substance, as we view it, the holding made the plaintiff almost a trustee. If he must account, certainly he was entitled to receive from the Brock Trading Company the total amount he paid out. The testimony is uncontradicted that he paid $1,811 for the stock of goods; that out of this money he received from the trustee only the sum of $1,348.53. This would leave a balance

which was paid to the other creditors of $462.47. While holding that he must account for the entire amount received at the sale, the court did not take into consideration the amount which he paid for the stock of goods.

In arriving at the amount due, the court found that the plaintiff had paid to the creditors $2,280; that his commission was $288, and that he was entitled to interest of $131.39, making a total paid out of $2,639.39. In the receipts it is admitted that he received $50 in payment and the court found he sold the goods for $2,500, making a total receipt of $2,550, which left a balance due of $89.39. We believe the proper method would have been for him to have added to the total amount expended by the plaintiff the sum $1,811 (the amount he paid for the goods at the trustee's sale), making a total amount expended of $4,450.39, than to have charged him with receipts in addition to what was charged by the court in the sum of $1,348.53, which was the amount he received back from the trustee as his part of the proceedings of the sale, making a total amount received of $3,898.53, which of course would leave a balance of $551.86 due to the plaintiff under the court's finding in this case.

It is contended by the defendants that the court held the plaintiff liable on his promise to resell the goods for a sufficient amount to relieve the defendants of their liability. This was one of the main contentions of the defendants, but the court evidently did not follow the defendants' contention, because it would have relieved them from all liability entirely; and since it found that they were still indebted to the plaintiff in the sum of $89, this theory of the case must fall.

We can come to no other conclusion than that the above was the proper method of calculating the amount. We cannot understand how the court could possibly have held plaintiff accountable for the resale of the goods, and yet allow him nothing for the money which he expended. The testimony is undenied, and under the theory adopted by the court, as we view it, the plaintiff would have been entitled to a judgment of at least $551.86.

The sixth proposition presented is the question of an attorney's fee. The note provided for an attorney's fee of 10 per cent. The court in all probability adopted the proper method of assessing an attorney's fee under the amount which it found due, but since we find that the plaintiff is entitled to at least $551.86, we believe the attorney's fee should be assessed according to the note at 10 per cent. of the amount found due thereon.

There is also an objection that the court erred in not reopening the case for the purpose of allowing the plaintiff to introduce new testimony. This, we believe, under the facts in this case, was a matter within the discretion of the court, and in this we do not believe the court abused its discretion.

Was the land covered by the mortgage of Baber a homestead? This involves the construction of section 1, art. 12, of the Constitution of the state of Oklahoma, which reads as follows:

"The homestead of any family in this state, not within any city, town or village, shall consist of not more than 160 acres of land, which may be in one or more parcels, to be selected by the owner. The homestead within any city, town or village, owned and occupied as a residence only, shall consist of not exceeding one acre of land, to be selected by the owner."

Under the facts as above given, we believe that Lone Grove is at least a village, if not an incorporated town. It is true that the town government had not functioned for some 15 or 18 years, no officers had been elected, and no town taxes collected, but no action had been taken to dissolve the corporation, and it remained a legal entity. If, however, it is not a town under the laws of the state of Oklahoma, it is certainly a village. And as our Constitution used the words "city, town, or village" (Lone Grove consisting of 50 or 60 houses, three or four stores, garage, post office and depot, and was laid out in lots and blocks with streets), it was undoubtedly a village as contemplated by the Constitution. We find no Oklahoma authorities defining a "village," but the word seems to imply an assemblage of houses and businesses, or both, less than a city or town, occupied usually by farmers or laboring people. Mikael v. Equitable Sec. Co. '(Tex. Civ. App.) 74 S. W. 67; In re West Philadelphia (Pa.) 5 Watts and S. 281; Herbert v. Lavalle, 27 Ill. 488; State v. Lammers, 113 Wis. 398, 86 N. W. 677; State v. Village of Minnetonka, 57 Minn. 526, 59 N. W. 972, 25 L. R. A. 755; Russell v. Detroit Mutual Fire Ins. Co., 80 Mich. 407, 45 N. W. 356; Town of Enterprise v. State, 29 Fla. 128. 10 South. 740.

Under the above and many other decisions from other states, we can come to no other conclusion than that Lone Grove was a town or village under the above provision of our Constitution.

Can a man own a homestead partly with-

in a town or village and partly outside a town or village, even though the two pieces of land are adjacent? Again we find no Oklahoma authorities. But, under the clear provisions of our Constitution we do not believe there was any such intention by the framers of our Constitution. The provision, as above quoted, states definitely that a homestead may consist of certain lands not within a city, town or village, and, again, that a homestead may consist of certain lands within any town or village. However, the question of whether or not a homestead exists, is a question of fact and is to be determined under all the facts and circumstances in each case, restricted only by the Constitution and statutory provisions.

In 13 R. C. L., p. 579, it is stated as follows:

"It has been held that urban and rural homesteads cannot be blended, and so, where one owns land in a town and also outside land, if the owner resides within the town or on the outside land, he cannot claim the other lands as part of his homestead; and the burden of proof in such a case is upon the homesteader to establish any exception in his favor."

In 29 C. J. 790, we find the following:

"No claimant of homestead right is entitled to two homesteads at the same time. Thus, he cannot claim both a rural homestead and an urban homestead."

In Faust v. Sanger (Tex. Civ. App.) 35 S. W. 404, it is stated:

"Where a householder lives on a lot within the corporate limits of a town, and also owns lands adjoining it, outside such limits, no part of the latter can be claimed as a part of his homestead regardless of the value of the lots."

Under the circumstances in this case we are inclined to believe that, even though the two tracts of land may have been located within the town of Lone Grove and had not exceeded the constitutional limit of a homestead, Baber could not have claimed both.

In the case of Watson v. Manning, 56 Okla. 295, 156 Pac. 184, it is held that one who owns three adjoining lots, upon one of which is a building formerly occupied and used by him as a residence and store, and who built and occupied a residence on another of said lots and for several years rented out the first building occupied by him as a home, cannot claim the first building as a homestead.

In the case at bar, Baber testified that a dwelling house was located on both tracts of land; that the 20 acres covered by the mortgage had been rented by him at all times since he purchased it, only when he was unable to secure a renter, and that the lots on which he lived inside the town of Lone Grove were six in number, and covered an area of 140 feet by 140 feet, where he had always maintained his home.

Under Baber's own testimony, and the other facts and circumstances as herein set out, we believe the court erred in holding the 20 acres covered by the mortgage to be a homestead.

For the reasons herein given, we hold that this case should be reversed, with instructions to the lower court to grant a rehearing on the question of the reasonable market value of the mules, and to grant plaintiff a judgment for the sum of $551.86, plus the difference between the reasonable market value of the mules and the sum of $250, if any, together with interest, and in addition thereto an attorney's fee of 10 per cent. of the amount due on said notes and a foreclosure of the mortgage given by Baber, in addition to the foreclosure granted in his original judgment; and it is so ordered.

BENNETT, TEEHEE, LEACH, and REID, Commissioners, concur.

By the Court: It is so ordered.

Note.—See under (1) 31 Cyc. p. 681. (2) 4 C. J. p. 854, §2834; p. 877, §2853; 2 R. C. L. p. 193; 1 R. C. L. Supp. p. 433; 4 R. C. L. Supp. p. 90; 5 R. C. L. Supp. p. 79; 6 R. C. L. Supp. p. 73. (3) 39 Cyc. p. 361. (4) 39 Cyc. p. 478. (5) 8 C. J. p. 1102, §1437 (Anno); anno. L. R. A. 1915B, 928; 3 R. C. L. p. 895; 1 R. C. L. Supp. p. 912. (6) 29 C. J. p. 790, §23; p. 809, §58; 13 R. C. L. p. 579.