**FEDERAL INTERMEDIATE CREDIT BANK v. COSBY et al.**

No. 18147.   Opinion Filed Oct. 30, 1928.

Rehearing Denied Dec. 11, 1928.

C. C. Davidson and Murray A. Holcomb, for plaintiff in error.

O. C. Wybrant, B. F. Willett, and A. H. Walker, for defendants in error.

BENNETT, C. The parties occupy the same position as in the trial court. The Federal Intermediate Credit Bank of Wichita, Kan., a corporation, hereinafter called "credit bank," plaintiff, brought suit in district court of Harper county, Okla., against Floyd Cosby, on a promissory note and to foreclose a chattel mortgage. Plaintiff's petition alleged, in substance, that plaintiff is a federal corporation chartered by the Federal Farm Loan Board under provisions of the Agricultural Credits Act of 1923, with its principal place of business at Wichita, Kan.; that First National Loan Company of Buffalo, Okla., hereinafter called "loan company," is a corporation organized under the laws of Oklahoma, with its principal place of business at Buffalo, Okla., and that it is authorized to lend money to persons engaged in agriculture, stock raising, etc., and to indorse and sell notes and securities therefor to any Federal Intermediate Credit Bank, and that said loan company is now insolvent.

That on November 6, 1923, Floyd Cosby, for valuable consideration, executed his note and chattel mortgage securing same to said loan company for $3,700 payable August 5, 1924, copies whereof are attached to the petition. The note is indorsed in blank by payee. That on November 22, 1923, for value, the loan company indorsed and delivered said note to plaintiff, which bank is now owner and holder thereof, and that same is due and unpaid.

Defendant admits the execution of the note, but says that plaintiff is not a purchaser thereof from the loan company, and that defendant received no consideration from said loan company; that the credit bank simply organized the loan company as intermediary in order to comply with federal laws governing such banks, which were not authorized to make loans direct to individuals generally, but only to such banks, trust companies, credit and loan companies, as furnished loans to persons engaged in stock raising, farming, etc., and to the extent of the accommodations extended to such persons for that purpose. That the credit bank virtually organized the loan company and took all the necessary steps for such purpose, including the furnishing of plans and data for its meetings, forms of charter, articles of incorporation, by-laws, resolutions, and all other steps required by and precedent to its right to do business. That plaintiff advised and required the loan company to conduct all of its business under the direction and control of plaintiff, and that all loans made, together with applications therefor and the securities thereon, be submitted to plaintiff for acceptance, and that the note in suit was one executed in conformity with this arrangement. That the money for this loan was furnished by plaintiff, the same being sent by it to the loan company for distribution, or to take up prior incumbrances on property; that the relationship existing between plaintiff and the loan company during all the transactions and dealings between the parties to this litigation and relative to the matter in controversy was that of principal and agent, the credit bank being the principal and the loan company its agent. and with respect to these and all other matters, the credit bank permitted the loan company and one Earl Brink, its secretary and treasurer, to transact all the business connected with the loan, the subject of this controversy, and also with reference to other similar loans, and to hold themselves out to the public as having authority to handle and conduct said business for plaintiff, permitted said parties to release mortgages, collect moneys and principal and interest from borrowers, transmit same to plaintiff, extend loans and take additional security for same, and that all of such acts and

conduct were confirmed, adopted and ratified by plaintiff; that defendants relied upon the apparent authority and right of said loan company and said Brink to transact said business, receive payment on said notes, release chattel mortgages, and that such reliance was justified by acts of plaintiff; that other payments than those in controversy here, but on the same note, were made by defendant to said Brink and said loan company, which were received and accepted without protest by plaintiff; that on November 4, 1924, the sums of $109.90, and later, on November 20th, the sum of $1,433.30 were paid to said Brink by defendant relying upon the agency of said loan company and said Brink, and that it was not until the loan company became insolvent thereafter that plaintiff notified the defendant to make payments direct. Defendant made other payments sufficient to liquidate the note in suit.

Plaintiff's reply denied all the allegations with respect to agency, the method of incorporating the loan company, and denied that the loan was made direct by plaintiff, but alleged that it was a purchaser for value in due course of said paper, and alleged that the loan company had a capital stock of $10,000, which was later increased to $16,400.

The reply denies the allegations contained in paragraph 7 of defendant's answer, wherein is set out the statement that the credit bank was the principal and the loan company was the agent in all the transactions and dealings involved in this controversy, and in paragraph 3 of said reply, plaintiff denies it authorized E. B. Brink of the loan company to collect the said note or any part thereof, and denies that it ratified the action of said E. B. Brink or the loan company in making the alleged collections, and says that if said E. B. Brink or the loan company made said collections, they acted as agents of defendant, Floyd Cosby. The case was tried to a jury, and from a verdict on all issues in favor of defendant, plaintiff appeals.

Plaintiff, as grounds for reversal, sets out in his brief 24 alleged errors. He first contends the court erred in permitting defendant to amend his answer after all evidence had been introduced by adding thereto paragraph 8½. There are several reasons why this is not reversible error: (1) That if the plaintiff were taken by surprise and prejudiced by the allowance of amendment, application should have been made immediately to the trial court to continue the case upon that ground, but, as shown by the record he took his exception without asking further relief of the trial court. We think, under the circumstances, that this court would not be warranted in now granting a new trial or reversing the same. Lewis v. Bandy, 45 Okla. 45, 144 Pac. 624, which holds in the fourth paragraph of the syllabus:

"Permission to amend a pleading at any stage of the trial rests in the sound discretion of the trial court, and same will not be disturbed, unless a clear abuse of discretion is shown."

(2) The original answer set out in great detail and with much reiteration that the relations between the plaintiff and the loan company, with reference to all the transactions and dealings concerning the matters in controversy herein were those of principal and agent, the plaintiff being the principal and the loan company being the agent, and that the loan company was at all times in respect to all these matters governed by and under the advice, control and direction of plaintiff. In paragraph 4 of the reply, plaintiff denies the allegations contained in paragraph 7 of the defendant's answer, which is the one containing the foregoing allegations as to agency, and in paragraph 3 of the reply plaintiff uses the following language:

"This plaintiff denies it authorized the said E. B. Brink or the First National Loan Company of Buffalo, to collect the said note or any part thereof, and denies that it ratified the action of said E. B. Brink or the First National Loan Company in making the alleged collections, and says that if the said E. B. Brink or the First National Loan Company did make said collections, they made them as agents of the defendant Floyd Cosby."

Although testimony offered on behalf of a defendant may be incompetent as not within the issues as set out in the allegations of the petition and answer, if, under the allegations of the reply, said evidence is competent, the plaintiff cannot object thereto. Pennington v. Bigbie, 127 Okla. 203, 260 Pac. 481.

Now let us examine the amendment to which they object. It says, first, that plaintiff expressly authorized and directed the said Earl Brink and First National Loan Company to collect, take, receive, and hold for and on behalf of plaintiff the proceeds of the sale of the chattels of defendant, Floyd Cosby, given to secure the note declared upon herein, and that pursuant to said authorization, the said Earl Brink and First National Loan Company did, as the agents of plaintiff herein, receive from the defendant Cosby the said sums of $1,433.30 and $109.90, and that thereafter, and on or about the 1st

day of December, 1924, the said plaintiff confirmed and ratified the acts of its agent as aforesaid, and further directed its said agents to hold and retain the same upon the order and direction of plaintiff. What additional force is given the original answer, which contains the statement in many forms that the relationship of principal and agent existed between the credit bank and the loan company, and that the loan company was under the direction, supervision, control, advice and direction of plaintiff. It is also stated that the loan company dealt with defendant as such agent, not only with apparent, but actual, authority, and received payments which are the subject-matter of this controversy, for which, if defendant be allowed credit, his note would be discharged. If the loan company was agent for plaintiff in all transactions and dealings with reference to this security and was acting under direction of plaintiff, the receipt by the agent of the payments was a receipt by the principal. Was not the plaintiff put upon notice by these sweeping allegations of agency, of apparent agency and express authority, that defendant would produce all available evidence to show the actions and doings of the alleged agent as a part of his defense? Did not the plaintiff have notice that, if the alleged agent had a conversation with Mr. Parker, one of the executive officers of the plaintiff in Wichita concerning this note and the payments thereon, it would be a very necessary part of his defense, and consequently a very necessary matter for the plaintiff also to inquire about and upon which he should have been prepared?

The defense in the answer is not based solely upon **apparent** agency, but it is a general allegation of agency, and the scope of it is comprehensive. So that plaintiff was put upon notice to be ready to negative agency of the loan company. In the amending paragraph, the allegations as to agency are made more specific in point of time, and the exact acts performed under the agency with respect to collecting the sums of money, but certainly they are included in the general allegation of agency and acts thereunder set out in the original answer. It is clear that the amending paragraph has reference to the same time, the same alleged principal and agent, the same purpose of the agency, and the same collections referred to in the original answer, and while it is true that in the latter part of the amending paragraph it says that plaintiff confirmed and ratified the acts of its agents, we seem to see no virtue in this allegation of ratification under the circumstances. 2 C. J. 906, par. 613; Goetz v. Goldbaum, 4 Cal. Unrep. Cases 749,

37 Pac. 646; Higbee v. Trumbrauer, 112 Iowa, 74, 83 N. W. 812. Plaintiff so understood it, for it sets out in paragraph 3 of his reply **a denial that it ratified the action of E. B. Brink or the loan company in making the collections,** and says that if said Brink or loan company did make said collections, they acted as agents of Cosby; so that we must conclude that it was not taken by surprise as shown by its pleadings. We are convinced that the amendment does not change substantially the claim or defense. American Warehouse Co. v. Gordon, 41 Okla. 618, 139 Pac. 123; Robinson & Co. v. Stiner, 26 Okla. 272, 109 Pac. 238; Trower v. Roberts, 30 Okla. 215, 120 Pac. 617; Oklahoma, K. & M. R. Co. v. Wilson, 84 Okla. 118, 202 Pac. 275; Hodges v. Alexander, 94 Okla. 122, 220 Pac. 927; Fulsom-Morris C. & M. Co. v. Mitchell, 37 Okla. 575, 132 Pac. 1103; Shipley v. City of Lawton, 51 Okla. 575, 152 Pac. 119; M., K. & T. Ry. Co. v. Horton, 28 Okla. 815, 119 Pac. 233; Elliott v. Coggswell, 56 Okla. 239, 155 Pac. 1146. The amendment was proper under section 318, C. O. S. 1921. Plaintiff cites two cases: Avery v. Jayhawker Gasoline Co., 101 Okla. 286, 225 Pac. 544, and Jones v. Exchange Nat. Bank of Muskogee, 124 Okla. 5, 253 Pac. 49. The Avery Case does not apply in principle. The court in that case said:

"The amendment allowed in this case changed substantially the claim of plaintiff. It permitted a recovery of damages in the sum of $11,000 for which no claim was made in the original petition and of which claim the defendant had no notice. It can hardly be said that a material amendment of a pleading, made in the absence of an adverse party and without notice to him, would be in furtherance of justice. * * * The defendants may not have had a valid defense to the plaintiff's cause of action for the possession of the property, but they might, and probably did, have a valid defense to the claim for damages, and they should have been given an opportunity of litigating that question."

The Jones Case, supra, is not controlling. The facts in that case are: The bank sued Minerva Jones for money loaned and attached her land. Plaintiff's evidence showed that defendant's husband borrowed the money from plaintiff to take up a mortgage on defendant's land. She was away, had no notice of the transaction until after her husband's death, the husband secured the loan from the bank by check made payable to his attorney who later indorsed it to Gum Brothers, mortgagee, received release of mortgage, and had it recorded. Sometime later, the attorney told defendant that he had advanced 75 cents to record

the release of mortgage. She then reimbursed the 75 cents. A demurrer to plaintiff's evidence was sustained, and it was thereupon allowed to amend, setting out that defendant, by paying the 75 cents, ratified the action of her husband in borrowing the money and judgment went against her. The Supreme Court reversed and rendered the case in favor of defendant. The court said:

"Plaintiff's right to recover rested upon the agency of the husband; but there was no evidence even tending to sustain the claim of agency. * * * The transaction was not with the bank and could not be held to be a ratification of anything more than the filing of the release after the mortgage had been paid."

That case is so foreign to the case in hand as to need no comment. In the case at bar the defendants rested upon agency, and there was evidence sufficient on that ground for the jury to pass on the matter. Jilson v. Dickinson-Reed-Randerson Co., 125 Okla. 276, 257 Pac. 759; Walker v. Beveridge, 107 Okla. 147, 231 Pac. 217. The amendment in this case involved the very facts on which the original answer was based, and therefore the same should not constitute surprise. Jordan v. Schuerman, 6 Ariz. 79, 53 Pac. 579; Jones v. Lavender, 55 Ga. 228.

Assignments Nos. 2 and 3 cover plaintiff's demurrer to defendant's evidence and plaintiff's motion to direct verdict for plaintiff. These contentions are based upon plaintiff's allegation that defendant wholly failed to introduce evidence to substantiate his answer, that he failed to introduce evidence of agency, and finally that defendant's evidence shows that Brink was acting on behalf of defendant. Plaintiff's argument is based largely upon the principle that in the payment of negotiable paper, possession of the paper itself by the person receiving payment, or proof aliunde of express authority to receive payment is indispensible. Many cases are cited with which we do not choose to take issue, but we think they have no application to the doctrine announced in this case, for the jury found that there was express agency, that there was implied agency, and, in addition, found a general verdict for defendant, which necessarily included a finding of agency. Our only inquiry, therefore, is: Was there evidence sufficient to submit to a jury on the question of agency? and, if so. their finding on the issue, under proper instructions, should be conclusive.

Next, it is contended that on the question of implied agency through a course of dealing, no inference can be urged beyond the necessary and legitimate effect of the facts from which the inference is sought, and the burden is upon the debtor. And a similar contention that the collecting of interest is not sufficient to raise a presumption of authority to collect the principal. We find nothing in these principles at variance with our understanding of the rule.

The general facts, briefly stated, are: That the loan company took applications for all loans from the farmers with such securities as they were able to furnish along with financial statements. The loan company submitted these applications and papers to the credit bank, which accepted or rejected the securities. It seems, from the very start to finish, the loan company was the only one who came in touch with the borrowers. Arrangements for extensions for the payment of interest, for additional securities, release of mortgages, and the receipt of payments and the like, were all transacted between the borrowers and the loan company. Payments of both principal and interest were received by the loan company and forwarded to plaintiff. The general officers of plaintiff knew nothing of any communications had with any borrowers, but their communications were direct with the loan company and with Brink. With reference to the loan in question, there is evidence that the credit bank became dissatisfied with the size of this loan and the security therefor, demanded a reduction, not from Cosby, but through the loan company, by letters, phone calls and personal conversations, and had them notify Cosby to reduce his loan, and upon being informed that the only way to do that was to sell the property covered by plaintiff's mortgage, plaintiff, through its officer, Parker, directed the loan company or Brink to carry out the sale and hold the money for plaintiff. Under this direction, the sale was advertised. a copy of the notice sent to plaintiff. Brink clerked the sale, collected over $1,400 in proceeds, and deposited it in the bank at Buffalo, and soon thereafter went to Wichita, reported the sale, the amount and proceeds thereof to plaintiff, and offered to give plaintiff a check for such proceeds. Plaintiff answered for him to keep the money until new papers were made out on other security covering the balance due by Cosby, and that Brink thereupon went home, and a few days later, the bank at Buffalo failed, and the proceeds were lost. If the foregoing constitutes the truth

of the matter, it seems clear to us that Cosby, in effect, paid these proceeds to plaintiff. This money was the proceeds of property upon which the plaintiff held a mortgage. The property could not have been sold without the assent of the mortgagee, who chose as its agent for that purpose Brink or the loan company, and after the proceeds went into the hands of such agent, they also chose to delay the receipt of the same at the expense of Cosby, who, from the evidence, knew nothing of the arrangement. We have no way of determining the truth of this statement. The witness is not before us. We have simply the black and white of the record showing that testimony and the major portion thereof went in without objection. We conclude, therefore, that there was sufficient evidence on the question of agency to be submitted to the jury and to warrant their finding thereon.

It is argued that before defendant could successfully maintain the defense that he was misled by the payments of other persons of their notes to said Brink or loan company, he must have had knowledge of such transactions prior to his payment to Brink. That would be true if the real defense were based upon estoppel, but since the defense is based upon agency of the loan company, or Brink, to receive payments, and since the payments are traced into their hands, it is not a question of estoppel, but simply of authority of those parties to receive the money for credit bank.

The sixth assignment of error is based upon exclusion of evidence offered by plaintiff, who sets out in his brief numerous questions propounded to his witness, to which questions objections were sustained. The record does not disclose what the witness would have testified if permitted to answer. Under many holdings of this court, no reversible error can be predicated upon this state of the record. Allen v. Terrell, 126 Okla. 251, 259 Pac. 268; Tandy v. Garvey, 115 Okla. 214, 242 Pac. 546.

Plaintiff next contends that irrelevant, incompetent, and immaterial testimony was introduced by which he was prejudiced. This objection is directed at the following questions:

"Q. Do you know how much property was sold by Mr. Cosby on that occasion?" * * * A. The amount? Q. Yes, A. $1,443.40. Q. Did you participate in that sale? A. Yes, sir. * * * Q. After the sale of this property, state to the court and jury whether or not you went to Wichita, Kan., and had an interview with the officers and agents of the Federal Intermediate Credit Bank relative to the sale. * * * A. Yes, sir. * * * Q. Did you have an interview with the plaintiff through its officers relative to the sale subsequent to the sale? A. Yes, sir."

We find no error in admitting this evidence, and none has been pointed out to us.

Mr. Brink, witness for defendant, was asked if he received instructions in writing prior to the sale, and answered in the affirmative, and that Mr. Loomis wrote him the letter. Asked as to what became of it, he replied that it was in the loan company files which Mr. Parker took when the bank at Buffalo failed, and that the files are not now in witness' possession, but that plaintiff has them. Then asked as to what instructions were contained in the letter, to which there was an objection, which was sustained; thereupon at the instance of attorney for defendant, the court ordered plaintiff to produce the entire file. The attorney for plaintiff said:

"I have the entire files in connection with the Floyd Cosby loan. By Mr. Wybrand: Is that letter in the files? By Mr. Davidson: It is not. There is no such letter in existence. Q. In view of the fact that there is no letter in the files from Mr. Loomis to you concerning a proposed deduction of the Cosby note, state to the court and jury the substance of the instructions."

This was objected to, and upon answering that he remembered the substance of the letter, he was permitted to state it as follows:

"The instructions was that the loan would have to be reduced to a certain amount if it was renewed. They said they had made an inspection and it would have to be reduced. * * * Not the exact wording, but the substance was ———."

The letter was addressed to witness as treasurer of the loan company, and pursuant to the instructions, witness, over the objection of plaintiff, said he told Mr. Cosby of the demand of plaintiff, and also told him that the only way to reduce the indebtedness was by sale, to which there was an exception.

"Q. And what did you do in the conduct of the sale? (Objection as incompetent, irrelevant and immaterial; overruled; exception). A. I just took charge of it and took care of the money, and made up the paper. * * * By the Court: Tell all that was in the letter. A. There were several letters. Probably it was in all of them. By the Court: This one letter you testified about? A. This particular letter was that if that was the only way it could be done, to have

the sale and see what stuff he had and appraise it and they would carry what they could on it. * * * Q. Let me ask the question: Why did you not pay the $1,443.40 to the Intermediate Credit Bank upon the occasion when you were there immediately following the sale? (Objection; overruled; exception). A. They told us to wait until the paper was fully fixed up, and then send the amount necessary to reduce it. * * * Q. Mr. Brink, who uniformly looked after the collection of these notes, renewals, payments of interest and extensions of time for the Federal Intermediate Credit Bank? (Objection as irrelevant, incompetent, and immaterial and calling for a conclusion). By the Court: If you know any one person did uniformly look after that, you may state. A. Mr. Loomis. Q. I mean at Buffalo, Okla. A. I did myself. * * * By Mr. Davidson: Move to strike the answer as a voluntary statement. * * * By the Court: Overruled. By Mr. Davidson: Exception."

We find no reversible error in the admission of this evidence. Much of same had theretofore been testified to in substance without objection. The statement as to contents of the letter was in line with, but weaker than, other testimony as to oral instructions given by plaintiff, and since it denied the existence of the letter, and the same, if it existed, was in its hands, we think plaintiff's contention without force.

The next assignment is that the court erred in denying plaintiff's motion to strike certain evidence given by witness Brink. The motion to strike was based upon the statement of counsel for plaintiff that the evidence of Brink was impeached and discredited by contradictory statements in his evidence, and also in the pleadings and by evidence of witness Fisher. We have gone over this testimony, and we find no such inherent improbability therein as would justify this court in branding it as false. We have no patent process for discovering truth, or of recognizing it when we stumble upon it, or of divining by a glance at the printed page between the product of a lax memory and a lax conscience. We see daily too many errors, too many irreconcilable statements made by those whom we think are decently honest, to assume that the genius to rightly divide the truth from error and falsehood has been vouchsafed unto us. The jury has made a pass at it. This is its specialty. And since we have held that there was evidence to support its finding, it should stand.

Assignment No. 10 argues that the judgment is not sustained by sufficient evidence and is contrary to law. That has been dealt with.

Assignment No. 11 is predicated upon the alleged error of the court in giving instruction No. 1. This instruction is lengthy and gives a sort of resume of the pleadings. About a page of such instruction is claimed to be erroneous. This instruction deals with the contentions of the parties as shown by their pleadings. It appears that the court clearly announced that such epitome disclosed simply the contentions of the parties, and it is a fair statement of such claims. It is objected to upon three grounds: (1) That there is no evidence introduced sustaining the issue pointed out therein. What was the issue pointed out therein? We quote a few lines therefrom:

"That the relationship existing between the plaintiff and the said First National Loan Company, during all the transactions involved in this lawsuit and in all the matters and transactions had between the plaintiff and others residing in the vicinity of Buffalo, was that of principal and agent, in which the said plaintiff was principal and the loan company was the agent, and that the said loan company was at all times and in all of said transactions, under the direction, advice and control of the plaintiff," etc.

That, as we view it, presented one of the crucial issues in the case, and did not constitute error.

(2) That it was unfair and prejudicial to the plaintiff in error, because it conflicts with the material issue in the case as defined by the court in the concluding paragraph, which is as follows:

"The principal question for your determination in this case is whether or not the said Brink and the said loan company, in receiving the said payments, acted as the agent of the plaintiff or of the defendant."

We cannot follow this reasoning, for, indeed, that appeared the chief issue.

(3) That it is an erroneous and incorrect statement of the issue. It reflected the issue tendered by the pleadings, and that issue, as we hold, was proper.

The twelfth assignment of error is based on an objection to instruction No. 3. That is objected to upon four grounds: First, that there was not a preponderance of evidence introduced by defendant in error to sustain the issues as defined by the court; second, it is an instruction on the weight of the evidence; third, it places the burden of proof of the affirmative answer of the defendant in error upon the plaintiff in error. These three objections are without merit. We have indicated that there was sufficient evidence to

go to the jury on the question of agency. This instruction does not discuss the weight of the evidence, nor does same deal at all with the burden of proof. Plaintiff's fourth objection says the concluding paragraph of this instruction is an erroneous statement of the law. This contention is supported by neither argument nor authority, and since the instruction appears fair upon its face, we shall treat it in similar fashion. It is also claimed that it assumes that E. B. Brink and First National Loan Company were agents of plaintiff for the purpose of making collections and transacting all the business in connection with the notes in controversy. The instruction, in our view, makes no such assumption.

The thirteenth assignment complains of instruction No. 4, upon the grounds: First, that it assumes the agency was established; and second, that it permits the jury to arrive at its verdict upon its belief from the evidence, facts and circumstances. This is almost the exact words of paragraph 1 of the syllabus in Reed v. Anderson, 127 Okla. 64, 259 Pac. 855. Third, it is an instruction on the weight of the evidence. These objections are without merit. The instruction does not assume any agency, and while the jury is instructed that they may find a verdict if they believe from the evidence, facts and circumstances, it also uses the words, "within the rules hereinabove laid down for your guidance."

The fourteenth, fifteenth and sixteenth assignments of error are treated together in plaintiff's brief. These deal with refusal of the court to give plaintiff's requested instructions 1, 2 and 3. We are of the opinion that, in so far as they stated correct principles of law and applicable to the facts in this case, the substance of these requested instructions was fully covered by the instructions actually given by the court.

The seventeenth, eighteenth and nineteenth assignments are treated together, and they have to do with the submission to the jury of interrogatories:

"(1) Was the First National Loan Company and E. B. Brink the agent of the plaintiff at the time of payment, if any, to them by the defendant of the amount in controversy between the parties plaintiff and defendant Cosby?

"(2) If your answer to the first question should be 'yes,' then answer whether said agency arises from implication.

"(3) If your answer to the first ques-tion should be 'yes,' then answer whether said agency arises by express agreement."

All of these interrogatories were answered in the affirmative. The objection to these interrogatories by plaintiff is that "there was absolutely no evidence that the First National Loan Company was the agent of the plaintiff in error, either by implication, or by express agreement, and no evidence that Brink was in any way its agent, except by his own discredited testimony that has heretofore been analyzed and discussed." As heretofore stated, there was evidence to be submitted to the jury upon these questions, and we find no error in the action of the court. Ginner & Miller Publish. Co. v. N. S. Sherman M. & I. Works, 93 Okla. 221, 220 Pac. 650; Green Constr. Co. v. Empire District Elec. Co., 92 Okla. 127, 218 Pac. 1075.

Assignment No. 20: That said court erred in not granting plaintiff in error's motion for new trial because of accident and surprise, as set out in exhibit A. We have dealt fully with this contention.

Assignment No. 21 has been covered under assignments 17, 18 and 19, and assignments 23 and 24 are duplications of assignments 2 and 3, heretofore discussed.

The twenty-second assignment is that the court, during the progress of the trial, made some observations as to what the evidence established, and counsel treated the remarks as a sort of instruction to the jury on the weight of the evidence. Counsel in no way criticized the conduct of the trial court; in fact, they indicate that the court was unusually patient and manifestly fair and impartial, but they think the casual remark of the court must have been prejudicial. This question is not properly presented. No exceptions to the remarks of the court were taken at the time, and the court was not requested to admonish the jury with respect thereto. Evidently counsel did not regard and did not treat the remarks as prejudicial. Even in the motion for new trial, this question seems not to have been presented to the trial court.

For the reasons given we hold that the judgment of the trial court should be affirmed.

HERR, LEACH, DIFFENDAFFER, and JEFFREY, Commissioners, concur.

By the Court: It is so ordered.